THE STATE vs. GLASS.

*September 4 — September 21, 1880.*

CRIMINAL LAW AND PRACTICE. *(1) Voluntary testimony of accused on preliminary examination, admissible against him. (2,3) Recalling witness, for further cross examination. (4–6) Court and jury: charge: written verdict.*

1. Under our statute which provides that "in all criminal actions and proceedings, the party charged shall, at his own request, but not otherwise, be a competent witness, but his refusal or omission to testify shall create

no presumption against him " (R. S., sec. 4071), the voluntary testimony of such a party on his preliminary examination may be put in evidence by the state upon his trial.

2. It is generally within the sound discretion of the court to allow a witness who has been discharged from the stand, to be recalled for further cross examination, even where other proceedings have intervened.

3. After defendant, who had testified in his own behalf, had rested, and after the introduction of some rebutting testimony, the court permitted the prosecution to recall him for further cross examination; but this consisted merely in asking him whether he signed a letter then shown him; and he answered that he did not, and the contents of the letter were not disclosed. *Held*, no ground for a new trial.

4. The judge read to the jury from his written charge three forms of verdict, and afterwards wrote out the same forms separately and passed them to the jury before they retired, defendant's counsel expressly consenting thereto. *Held*, no error; nor was such consent necessary.

5. An oral statement to the jury that they should find one of said three verdicts, and that their foreman should sign the verdict as found, *held* no part of the "charge" which the statute required to be reduced to writing.

6. Verdicts may be received *in writing* in the first instance; but if that were otherwise, a polling of the jury, and the assent of each to the verdict as read, would cure the error.

REPORTED from the Circuit Court for *Fond du Lac* County.

This action, commenced in Marinette county, was removed for trial to Fond du Lac county.

It came here on the report of the circuit judge, which contains the exceptions relied upon as grounds for a new trial. The facts stated in the report, and which are essential to an understanding of the exceptions and the questions presented for determination, are briefly as follows: An information was duly filed in the circuit court, charging the defendant with the crime of murder. On his preliminary examination, defendant had voluntarily testified as a witness in his own behalf. On his trial in the circuit court, and against his objection, that court permitted the magistrate before whom such preliminary examination had been held, to testify as to what defendant then stated, under oath, as to his encounter with the deceased.

After the defendant had introduced his testimony and rested (he having testified in his own behalf), and after the prosecution had introduced some testimony in rebuttal, the court, against a like objection, permitted the prosecution to recall the defendant for further cross examination. The district attorney thereupon showed him a letter and asked him if he wrote or signed it, and he answered that he did not.

When the jury were instructed, and before they retired for final deliberation, the circuit judge instructed and directed them to find one of three verdicts, all reduced to writing by him; and such writing was handed to one of the jurymen as they retired. The judge read the three forms of verdict from his written charge, but said to the jury, in words not contained in the written charge or taken down by the reporter, "You will find and return one of the three verdicts in writing now handed to you, and your foreman will sign the verdict as found." When the jury returned into court, on being asked if they had agreed upon a verdict, one of their number said that they had, and handed to the judge one of the said three verdicts in writing as delivered to them by the judge. The judge then took the paper and said, "Gentlemen of the jury, you will listen to your verdict as recorded by the court;" and thereupon he read: "We, the jury, find the defendant, *Albert E. Glass*, guilty of manslaughter in the second degree," and the same was entered as the verdict. The judge also asked counsel for defendant if he desired the jury polled, and, said counsel consenting, the jury were polled before the verdict was recorded. Before the jury retired, the counsel for the defendant was asked if he consented to the three forms of verdict in writing being handed to the jury, and he replied that he did.

For the defendant there was a brief by *Hudd & Wigman*, and oral argument by *Mr. Hudd*.

For the state there was a brief by *The Attorney General* and *H. O. Fairchild*, district attorney of Marinette county, and oral argument by *Mr. Fairchild*.

LYON, J. The following questions, arising upon the exceptions, are submitted in the report of the circuit judge for the decision of this court: "Should a new trial have been granted — *First*, because of the admission, against objection and exception, of the testimony or evidence of what defendant had admitted or said under oath, and while under arrest, charged with the crime alleged in the information? *Second*, [for error] in allowing and permitting, against objection and under protest, the calling of the defendant to the witness stand, after he had once been examined and dismissed? *Third*. Was it error to submit written forms of a verdict to a jury in cases of this nature?" These questions will be considered and determined in their order.

1. In *Dickerson v. The State*, 48 Wis., 288, Dickerson and Mrs. Mack were under arrest, charged with the murder of George Mack. On the examination of Mrs. Mack, Dickerson was sworn and examined as a witness for the state. On his trial for the same crime, the prosecution was permitted to give evidence of his testimony on such examination. After very careful consideration of the authorities, this court held that the evidence was properly admitted. The case differs from this only in that the testimony of Dickerson was given in behalf of the state, on the examination of another charged with the commission of the same crime; while here the defendant testified in his own behalf on his own examination. The judgment of the court went upon the ground that the free and voluntary statements or confessions of a person on trial for a crime, whether under oath or not, may be given in evidence against him. We can discover no sound reason why the rule is not applicable as well to a case where the statements or confessions are made by the accused when testifying in his own behalf as a witness on his examination or trial, as when testifying upon the examination or trial of another charged with the same crime. Statements made by the accused out of court concerning the crime charged, if freely and voluntarily made, may

always be proved against him on his trial. Why should like statements made in court under oath, and which are equally free and voluntary, stand upon a different footing?

Before statutes were enacted allowing persons accused of crime to testify in their own behalf, the courts held that proof of statements made by one in arrest for a crime, before the examining magistrate or coroner, were not admissible as evidence against him. The decisions seem to go upon the ground that such statements were compulsory, not voluntary. The rule that voluntary statements, free from any element of duress, are admissible, seems to be recognized in all the cases. The statute which allows a defendant in a criminal prosecution to testify in his own behalf, and which provides that his refusal or omission to do so shall create no presumption against him (R. S., sec. 4071, p. 992), removes from the testimony so given the element of compulsion. The full and satisfactory discussion of the question under consideration, by Justice COLE in the Dickerson case, renders further discussion of it here quite unnecessary.

We adopt, as a correct statement of the law on this subject, the language of the supreme court of California in *People v. Kelley*, 47 Cal., 125. After referring to the case of *People v. Gibbons*, 43 Cal., 557, in which it was held that when the case arose a magistrate had no authority to receive a sworn statement from the accused of the facts of the transaction, and that a statement thus made under oath, in the form of a deposition, was not competent evidence against him on a subsequent trial for the offense, and after citing subsequent statutes, the court says: "The result of these several provisions is, that now an accused person, with his consent, may become a witness either for or against himself at the preliminary examination before the magistrate; and if he voluntarily becomes a witness under such circumstances as to render it clear that his testimony was purely voluntary, and free from restraint or undue influence, there can be no reason why it may not be

given in evidence against him on his subsequent trial for the offense. If his voluntary, unsworn statement may be proved against him as a confession, his voluntary testimony under oath, given in a proceeding in which he elects and is authorized to testify, ought to stand upon at least as favorable a footing."

It follows that the testimony mentioned in the first question submitted was properly admitted, and hence that its admission is not ground for a new trial. This answers that question in the negative.

2. It is generally in the sound discretion of the court to allow a witness who has been discharged from the stand to be recalled for further cross examination; and this is so, even though, as in the present case, other proceedings have intervened. It is possible that a case might be supposed which would justify the court in holding that to subject the witness to such further cross examination would be an abuse of discretion. But we are not required to determine whether or not this is such a case; for the defendant, when recalled, was only asked whether he signed a letter then shown him, and he answered in the negative. That is all there was of it. The contents of the letter were not disclosed, and the defendant could not have been prejudiced by the transaction. It is therefore no ground for a new trial. The second question must also be answered in the negative.

3. We gather from the report that the judge read to the jury from his written charge three forms of verdict, and that he wrote out the same forms separately and passed them to the jury before they retired, counsel for defendant expressly consenting thereto.

With or without such consent, we are aware of no law or rule of practice which was violated by the transaction. On the contrary, we think it was a very proper method of securing in the first instance a verdict accurate in form. We conclude that it was not error to submit such written forms to the

jury, and hence the third and last question must, like the other two, be answered it the negative.

4. Two other questions, not submitted by the circuit judge, were argued here.   These are, whether it was error for the judge to say to the jury, " You will find and return one of the three verdicts in writing now handed to you, and your foreman ,will sign the verdict as found," the words not being in his written charge, and not having been taken down by the reporter; and whether it was error to receive a written verdict in the first instance.

It was held in *Grant v. Ins. Co.*, 29 Wis., 125, that a direction to find for the plaintiff, with a statement of the grounds of such direction, was not within the statute requiring the judge's charge to be reduced to writing. . Here, the jury were told that they must find one of three verdicts.   This was equivalent to saying that there was no evidence in the case which would sustain any other verdict.   In *Grant v. Ins. Co.*, the jury were told that there was no evidence to support a verdict for the defendant.   The principle of the two cases is precisely the same, and the same rule is applicable alike to civil and criminal cases.   See *Mason v. H. Whitbeck Co.*, 35 Wis., 164.

On the other question, it is only necessary to say that, although verdicts in criminal cases are usually delivered orally, we have seen no statute, and are not familiar with any rule of law, which requires that they shall be so delivered.   No good reason is perceived why such verdicts may not be in writing as well.   The objection becomes immaterial in this case, however, for the jury were polled, and, upon the verdict returned being read, each juror affirmed it to be his verdict.   This is equivalent to an oral verdict returned in the first instance.

*By the Court.*— It will be certified to the circuit court that each of the questions submitted to this court is resolved in the negative, and all the exceptions appearing in the report are overruled; and that court is advised to pronounce judgment pursuant to the verdict of the jury.