Yanke vs. The State.

## YANKE VS. THE STATE.

*February 11 — March 2, 1881.*

CRIMINAL LAW AND PRACTICE: EVIDENCE. *(1) Evidence as to motive. (2) Questions put to witness by judge. (3) Admissions. (4, 5) Cross examination of accused as witness. (6) Evidence of insanity. (7) Immaterial evidence. (8) Conviction on weak evidence: Court and jury: Motion for new trial.*

1. In a prosecution for an assault with a deadly weapon with intent to kill, where the question of *motive* was important, evidence was admitted for the state as to what occurred between defendant and the prosecuting witness about a week before the assault, and at a distant place, in another state. *Held*, no error, the facts proved having some bearing on the question of motive.
2. The fact that a small part of such evidence was elicited by questions put by the presiding judge, is not ground of reversal.
3. Admissions made freely by the accused to the officers, while under arrest, are admissible against him in this state.
4. Where the accused offers himself as a witness in his own behalf, he is subject to cross examination to the same extent as any other witness.
5. Where the testimony of the accused on material points was in direct conflict with that of the prosecuting witness, and also showed that he was a married man, and had not been with his wife for some weeks, it was not error to sustain an inquiry, on cross examination, as to the length of time since he had lived with her; as the answer might have some bearing on his credibility. Whether, in case of his refusal to answer the question, he should have been punished as for contempt, .is not determined.

Yanke vs. The State.

6. A witness for the accused (not an expert) was asked whether the complainant was "*considered* partially deranged." *Held*, that there was no error in ruling out the inquiry; though the accused might show that the complainant was insane, by a proper question to a proper witness.
7. Without any previous foundation therefor in the testimony of the complainant, a witness for the defense was asked whether such complainant had requested him to "bail out" the accused. *Held*, that there was no error in rejecting the evidence.
8. Though the evidence in this case to show an intent to kill appears to this court very weak and unsatisfactory, yet, as the jury found such intent, upon instructions which were not erroneous or misleading, and there was no motion for a new trial, the judgment on the verdict must be affirmed.

ERROR to the Circuit Court for *Columbia* County.

The case is thus stated by Mr. Justice CASSODAY:

"The plaintiff in error was found guilty of an assault with a deadly weapon upon Louis Koepp, October 10, 1879, with an intent to kill him, and was accordingly sentenced to imprisonment for the term of five years. The theory of the prosecution was, and there was evidence tending to show, that, about a week prior to the alleged assault, the plaintiff in error, *Fred.*, and the complainant, Louis, being cousins, were together near Rochester, Minnesota, where Louis had been at work; that *Fred.* there ascertained that Louis had a note against a man there for something over $200, and advised him to have it collected, and get all his money together, and return with him to Wisconsin; and, as an inducement, falsely represented to him that his father and mother had just previously arrived there from Germany; that Louis acquiesced in the suggestion, and allowed *Fred.* to take the note, which he pretented to put into the hands of an attorney there for collection, and take a receipt therefor; and that soon after the money on the note was in fact collected and sent for Louis to Wisconsin; that Louis was also induced to loan some money to *Fred.*, who, with the money so borrowed, secretly bought a revolver at Winona, and then, keeping it concealed, he and Louis, in pursuance of the arrangement, came together to Portage

City, where they arrived in the night before the assault, and at once started on foot for Montello; and that while on the road, and just after having rested for some time, and towards morning, *Fred.* shot at Louis with the revolver, with the intent to kill him, and with the expectation of getting some gain to himself by way of the note or otherwise."

The cause was submitted on the brief of *G. J. Cox* for the plaintiff in error, and on that of *The Attorney General* for the state.

CASSODAY, J.   1. The first error assigned is the admission of evidence, against objection on the part of *Fred.*, of what was said and done in Minnesota in regard to the note.   It is true, the occurrence took place at a long distance from the place of the assault, and some days before.   Yet as *Fred.* and Louis were, during all the time, together or acting in concert with a view of returning to Wisconsin, we are inclined to the opinion that such testimony had some bearing upon the question of motive, which, in view of the contradictory statements of these two parties, and the nature of the offense, was an important subject of inquiry.   The testimony was quite remote, it is true, but we are not prepared to say that it had no bearing upon the question whether *Fred.*, at the time of the assault, had any motive of gain to commit the offense.   Whether the accused, in such a case, intended to kill, is a question of fact for the jury.   *Kunkle v. The State*, 32 Ind., 320.

The rule is well stated by Roscoe, p. 92, where he says: " There are cases in which much greater latitude is permitted, and evidence is allowed to be given of the prisoner's conduct on other occasions, where it has no other connection with the charge under inquiry than that it tends to throw light on what were his motives and intention in doing the act complained of."

2. The evidence in relation to the note being admissible, there would seem to be no substantial objection to the

mere fact that a small portion of it was elicited by questions put by the presiding judge instead of the attorney.

3. It is urged upon the part of the accused, that it was error for the court, against objection, to allow evidence of admissions made by him to the officers while under arrest. But this court has recently held that such evidence is admissible. *Dickerson v. The State*, 48 Wis., 288; *State v. Glass*, 50 Wis., 218. There is no claim that the admissions were elicited by coërcion, threats or artifice; but on the contrary the evidence clearly shows that they were made freely, if not voluntarily. The evidence is to the effect that the admissions of *Fred.* were elicited by answers to questions put by himself. He asked: " Why did you take me up on the road in this way, and take me off ? " To this he was answered: " You will know more about it when you get to Montello. Your partner says you shot a pipe out of his mouth on the road between here and Portage." Thereupon *Fred.* made the admissions complained of. Certainly there is no rule of law to exclude admissions thus made, unless it be on the ground that no admissions made by a party while under arrest shall be given in evidence. But that would be contrary to the rule established by this court.

4. On the cross examination of *Fred.*, he testified: " Am about thirty years old. Am a married man. My wife is down in Germania somewhere." He was then asked: " How long since you lived with her? " An objection to the question was overruled, and defendant excepted. We do not construe this question as requiring the prisoner to give testimony tending to show that he had been guilty at another time of some other crime; and hence it was not inimical to the rule laid down in *Schaser v. The State*, 36 Wis., 429, and other cases cited by counsel. He was made a competent witness in his own behalf, at his own request, and hence there can be no hardship in holding that he thereby subjected himself to the same rules of cross examination applicable to other witnesses. Section 4071, R. S.; *State v. Glass*, 50 Wis., 218. Mr. Green-

leaf says: "The power of cross examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests which the law has devised for the discovery of truth. By means of it the situation of the witness with respect to the parties, and to the subject of litigation, his interest, his motives, his inclination and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers of discernment, memory and description, are all fully investigated and ascertained, and submitted to the consideration of the jury before whom he has testified, and who have thus had an opportunity of observing his demeanor, and of determining the just weight and value of his testimony." 1 Greenl. Ev., § 446.

Here the prisoner had given his version of what occurred before, after and at the time of the alleged assault. His testimony was in direct conflict with that of Louis. The credibility of each was directly involved. As bearing upon that credibility, we cannot say that it was immaterial to inquire how long it had been since he lived with his wife. He had already stated his age, and that he was married, and that his wife was somewhere down in Germania. The testimony already in the case clearly indicated that he had not been with her for some weeks, at least. The credit to be given to a witness would seem to be materially affected by determining whether he had any home or abiding place, or had abandoned his family and become a tramp. There seems to be, therefore, no objection to the inquiry as to how long it had been since he had lived with his wife. It will be noticed that the prisoner was not coerced to answer. Whether he might properly have been committed for contempt, had he refused to answer, is a question upon which we express no opinion.

5. A witness on the part of the accused was asked this question: "Is it a fact that he (the complainant) is considered partially deranged?" and error is assigned for sustaining an

objection to the same.   The sanity or insanity of Louis was unquestionably important as bearing upon his credibility. *Alleman v. Stepp*, 52 Iowa, 626.   Had a proper question been put to a competent witness, calculated to elicit information as to the condition of Louis' mind at the time, it probably would have been held error to have ruled it out.   Was this such a question put to such a witness?   The witness was not asked as to his own opinion, nor as to the fact of Louis' sanity or insanity, but whether he was " *considered* partially deranged." A more serious objection to the question, however, was the fact that the witness had not shown himself competent to sit in judgment upon the mental condition of Louis.   He was not a physician, as in *Alleman v. Stepp*, but apparently a layman, with no more skill or experience in mental science than ordinary men.   There are authorities entitled to much weight holding that the opinion of a non-expert witness is not admissible in evidence to prove mental condition, although formed from personal observation of the appearance and conduct of the individual, except in the case of subscribing witnesses to a will.   *Boardman v. Woodman*, 47 N. H., 120; *State v. Pike*, 49 N. H., 399; *State v. Archer*, 54 N. H., 468; *Commonwealth v. Fairbanks*, 2 Allen, 511; *Commonwealth v. Wilson*, 1 Gray, 337.   But this stringent rule has been somewhat relaxed in other cases, as in *Dunham's Appeal*, 27 Conn., 192, in which it was held, per Ellsworth, J., in an able opinion, that " where the insanity of a person is the matter in dispute, a non-expert witness may give his opinion, accompanied by a statement of facts within his own knowledge upon which he bases it, in regard to the sanity of the person in question." In the course of his opinion he said: "The mere opinion, without knowledge, of a non-expert is opinion still.   It is an inference from hypothetical facts, formed by a person who avowedly has no qualification or legal competency to form an opinion.   In the nature of the case it must be so."   Page 200. To the same effect is the able opinion of Foster, C. J., in

*Hardy v. Merrill*, 56 N. H., 227, which overruled *Boardman v. Woodman, State v. Pike*, and *State v. Archer, supra*, and followed the dissenting opinion by Doe, J., in *State v. Pike*. The rule, as stated by Ellsworth, J., in *Dunham's Appeal, supra*, is fully sanctioned in *Clapp v. Fullerton*, 34 N. Y., 194, 195; *Hewlett v. Wood*, 55 N. Y., 634; *Clary v. Clary*, 2 Iredell's Law, 78; *Potts v. House*, 6 Ga., 324; *Gibson v. Gibson*, 9 Yerger, 329; *In re Vanauken*, 2 Stockton's Eq., 191, 192; *Titlow v. Titlow*, 54 Pa. St., 223.

The opinion of this court, written by the present chief justice, in *Burnham v. Mitchell*, 34 Wis., 133, seems to be in accord with the weight of authority as above indicated. We must therefore hold that the question put was incompetent, even under the most liberal rule.

6. So error is assigned because the court sustained an objection to a question put to a witness as to whether Louis requested him to bail *Fred.* out. From a careful reading of Louis' testimony we are unable to discover that any foundation was laid for such question to another. Besides, it occurred after the offense, and as Louis was his cousin there may have been new circumstances calculated to excite the sympathy of Louis, or some family influence brought to bear upon him to make the request, not at all connected with the alleged crime. The weakness of Louis is apparent throughout the whole case; and merely soliciting bail for his cousin, under the circumstances, did not have such a direct bearing upon his sincerity or credibility as to work a reversal because it was excluded. Men of eminent character have been known to offer themselves as bail for those whose crimes, to them, were the most revolting.

On such examination relating to collateral facts, the trial court must necessarily have some discretion; and we are unwilling to hold that it was such an abuse of discretion to rule out that question as should operate as a reversal. It was remote in any view, and no deduction could be drawn from it,

except a mere inference, and that quite liable to misapprehension, especially as Louis was a mere witness, and had not been interrogated upon the subject.

7. Counsel insist that the charge of the court was faulty in many respects and unfair to the accused; that in the summing up of the evidence the court did not leave the facts to the jury to pass upon, but told them what had been established by the testimony; that it invited the jury to look for an improper motive. We have carefully examined the different portions of the charge excepted to, and the whole charge, and although there is a possibility that the jury were misled by some things that were said, yet in each case the statements were so qualified as to submit the facts to the jury, and hence, in this regard, there is no substantial ground for assigning error. If the counsel desired more definite or favorable instructions, he should have so requested.

8. It is urged by counsel that the evidence in this case was insufficient to uphold the conviction. From a very careful reading of the record we are forced to say here, as this court, per LYON, J., did in the *State v. Moon*, 41 Wis., 684, that the testimony to prove *Fred.'s* intention to kill is, to our minds, "very weak and unsatisfactory." In fact, Louis' own version of the occurrence, as it appears in the record, leaves a very strong impression that they were at the time both more or less intoxicated, and that his recollection in relation to it is very vague and shadowy. The facts stated by Louis as to the time of night when it occurred; that *Fred.* had just before been asleep; that Louis at the time was sitting by the side of the road with his knife in his hand; that he made inquiries of *Fred.* as to who had been shooting; that they departed from the place together; that immediately after he loaned *Fred.* a dollar; and that at least some of the chambers of the revolver remained undischarged,— strongly tend to show that there was no intention or desire on the part of *Fred.* to kill him. Still, we are unable to say that there was an absence of all

evidence. Had the accused petitioned the circuit court for a new trial on the ground that "justice had not been done," as required by section 4719, R. S., and had such petition been denied, then the point urged by counsel would have been before us for consideration, and in that event we should probably have reversed the judgment. On this point we have no desire to add anything to the recent, and to our minds very satisfactory, opinion of this court, written by TAYLOR, J., in *Ohms v. State*, 49 Wis., 415. As no such petition was presented, however, we have no power in the premises.

It may be that some things occurred upon the trial which do not appear in the record. The usual fairness of the learned circuit judge who tried this case towards all parties, including those accused of crime, leads us to suspect that something must have so occurred; otherwise the summing up of the testimony to the jury by him would, in our opinion, have been more favorable to the prisoner.

*By the Court.*— The judgment of the circuit court is affirmed.