Perkins vs. The State.

PERKINS, Plaintiff in error, vs. THE STATE, Defendant in error.

*December 22, 1890 — January 13, 1891.*

CRIMINAL LAW AND PRACTICE: HOMICIDE. (*1, 2*) *Instructions to jury: Self-defense: Retreat.* (*3*) *Manslaughter in third degree: Heat of passion: Evidence.* 4. *Impeachment of witness.*

1. On a trial for murder, where it was claimed that the killing was in self-defense, it was error to charge the jury that the taking of human life is not justified "by anything short of an actual, present, and urgent danger, which makes the taking of life necessary." And where the error is repeated in short, pithy instructions, it is not cured by a subsequent instruction, in a long and involved sentence, to the effect that the defendant might act in self-defense if the appearance of impending danger was such that he reasonably might, and in fact did, believe that danger of some great personal injury was actually impending over him, and there was no other reasonable safe means or way to avert or escape it.

2. It was error, also, to charge that "it will not justify the killing, if the necessity of the killing can be avoided by retreat," the conditions under which a retreat is necessary not being stated.

3. The fact that the shooting and killing was preceded by a quarrel, much abusive language, and great excitement, would warrant a verdict of manslaughter in the third degree, which, under sec. 4354, R. S., is "the killing of another in the heat of passion, without a design to effect death, by a dangerous weapon."

4. A witness of the opposite party may be recalled for further cross-examination touching statements made by him out of court, to lay the foundation for his contradiction by way of impeachment; and the party so recalling him should not be obliged to make the witness his own, and thus be deprived of the right to impeach him.

ERROR to the Circuit Court for *Clark* County.

The plaintiff in error, *Hugh Perkins*, was tried upon an information charging him with the murder of one Isaac Meddaugh, and was convicted of manslaughter in the second degree. The testimony given on the trial was conflicting. That on behalf of the defense tended to show that on the day previous to the homicide there had been a quarrel between Meddaugh and *Perkins* at the saw-mill operated by the latter; that Meddaugh, who was a larger and more powerful man than *Perkins*, had then made a violent assault upon *Perkins*, and had only been prevented from doing him serious injury by the intervention of a third person; and that Meddaugh had threatened to take *Perkins's* life. On the day of the killing Meddaugh with two companions came to the mill for the purpose, as the prosecution claimed, of hauling away some lumber which had been sawed for him. The testimony for the defense tends to show that one of the companions of Meddaugh went into the mill and there used very abusive language to *Perkins*, who finally ordered him to go out; that he then returned and spoke to the other two, who thereupon threw down their hats and jackets and started into the mill; that as they were advancing rapidly toward *Perkins* he called out to them three times to stop, saying, the last time, " Stop, Ike, or I'll shoot! " Meddaugh replied, " Shoot, you son of a b——! " and as he grasped or struck at *Perkins* the lat-

ter fired the fatal shot from a revolver which he had drawn from his pocket. Other facts will sufficiently appear from the opinion.

For the plaintiff in error there was a brief by *Sturdevant & Sturdevant*, and oral argument by *J. R. Sturdevant*. They argued, among other things, that if the assault upon him was felonious the plaintiff in error was not bound to retreat. *Pond v. People*, 8 Mich. 150; 1 Bish. Crim. Law (7th ed.), secs. 849–853, 866, 867, 869; *Stoneham v. Comm.* 86 Va. 543; *Burgess v. Territory*, 8 Mont. 57; *Marcum v. Comm.* 4 S. W. Rep. (Ky.), 786; *Erwin v. State*, 29 Ohio St. 186; *Bunyan v. State*, 57 Ind. 82; *Carroll v. State*, 23 Ala. 28; *State v. Evans*, 33 W. Va. 417; *People v. Gonzales*, 71 Cal. 569; *Radford v. Comm.* 5 S. W. Rep. (Ky.), 343; *May v. State*, 23 Tex. App. 146; *U. S. v. Wiltberger*, 3 Wash. C. C. 515; *Comm. v. Selfridge*, Horr. & T. Cases, Self Def. 28, 33. The court undertook to charge the jury on the law of retreat, and was bound to charge correctly and give the whole, and not a part, of the law applicable thereto. *Lancaster v. Comm.* 4 S. W. Rep. (Ky.), 320; *Agee v. Comm.* 5 id. 47; *State v. Burke*, 30 Iowa, 331; *Keener v. State*, Horr. & T. Cases, Self Def. 539, and cases cited. It was error to instruct the jury that there was no evidence to warrant a verdict of manslaughter in the third degree. R. S. sec. 4354; 1 Hale, P. C. 449; 4 Bl. Comm. 191; Wharton, Homicide, 35, 417; *State v. Cody*, 18 Oreg. 506; *State v. Norton*, 28 S. C. 572; *State v. Brown*, 40 La. Ann. 725; *Cook v. Comm.* 86 Ky. 663; *State v. Evans*, 36 Kan. 497; *Territory v. Baker*, 4 N. Mex. 117; *State v. Wilson*, 98 Mo. 440; *State v. Wensel*, 98 id. 137; *State v. Elliott*, 98 id. 150; *People v. Freel*, 48 Cal. 436; and cases cited in the opinion in this case.

As to the error in regard to the impeachment of the witness Robert Meddaugh, counsel cited, besides the authorities cited in the opinion, *General v. Hitchcock*, 1 Exch. 91,

99; *State v. Downs*, 91 Mo. 19; Rapalje, Witnesses, sec. 209; *Tinklepaugh v. Rounds*, 24 Minn. 298; 1 Greenl. Ev. sec. 447.

For the defendant in error there was a brief by the *Attorney General*, and *L. K. Luse*, Assistant Attorney General, and oral argument by *Mr. Luse*. They contended, *inter alia*, that the instruction in relation to retreat was correct as applied to this case. The cases in which a man is not obliged to retreat are limited to assaults made with a dangerous weapon or in such a manner as to indicate a felonious assault, with the means at hand of doing some more serious injury than assault and battery. *Comm. v. Drumm*, 58 Pa. St. 1, 20; *Shorter v. People*, 2 N. Y. 193; *People v. Sullivan*, 7 id. 399; *U. S. v. Wiltberger*, 3 Wash. C. C. 515; *State v. Kennedy*, 20 Iowa, 569; *Greschia v. People*, 53 Ill. 295; *State v. Martin*, 30 Wis. 216; Horr. & T. Cases, Self Def. 28–33; 1 Bish. Crim. Law, 50; Whart. Homicide, sec. 480; 1 Whart. Crim. Law, sec. 484; *People v. Cole*, 4 Parker Cr. Rep. 35; *People v. Pierce*, 2 Edm. 76; *People v. Donaldson*, id. 85. See, also, *State v. Garric*, 35 La. Ann. 970; *Parrish v. State*, 14 Neb. 67; *State v. Shelton*, 64 Iowa, 340; *State v. Mahan*, 68 id. 306; *Carter v. State*, 82 Ala. 15; *Duncan v. State*, 49 Ark. 547; *State v. Donelly*, 69 Iowa, 705; *U. S. v. Outerbridge*, 5 Sawy. 620; *Davison v. People*, 90 Ill. 221; *State v. Benham*, 23 Iowa, 154.

ORTON, J. The plaintiff in error was tried on an information for murder in the first degree, and was convicted of manslaughter in the second degree, and sentenced to imprisonment in the state prison at Waupun for the term of five years. A motion for a new trial, on behalf of the plaintiff in error, was denied *pro forma*, and a motion in arrest was denied, and also a petition for a new trial based on the same grounds as herein assigned for error. The case comes to this court on writ of error and bill of exceptions settled and signed by the judge.

The *first* error assigned and considered in the brief of the learned counsel of the plaintiff in error is based upon the following instructions to the jury: "The taking of a human life is an act of such fearful import as not to be justified by anything short of an *actual, present,* and *urgent danger,* which makes the taking of life *necessary.*" "The danger which will justify the taking of human life must be *actual* and *impending.*" "Such *necessity* cannot arise when," etc. "The *danger* which will justify the killing of a human being must be *actual* and *impending,* with no obvious means or opportunity to avert or safely escape it." "And it must be a danger which threatens at least some great personal injury."

These instructions, in which "actual danger" is so often repeated and intensified by the words "present," "urgent," and "impending," and in which "necessary" is followed by "necessity," are as emphatically and boldly erroneous as language could make them. By all the leading authorities in this country at the present day, this is not the law of self-defense, and yet the court, with emphasis and reiteration, impresses it upon the minds of the jury. The learned attorney general virtually concedes that such is not the law. The learned counsel of the plaintiff in error cites some late cases in point. *State v. Keasling,* 74 Iowa, 528; *Vollmer v. State,* 24 Neb. 838; *People v. Gonzales,* 71 Cal. 561; *Stanley v. Comm.* 86 Ky. 440; *State v. Shelton,* 64 Iowa, 333; Horr. & T. Self Def. 104.

But the court afterwards instructed the jury as follows: "The person assailed may act upon a reasonable appearance of imminent danger. So that if the appearance of impending danger is such that it reasonably may, and in fact does, cause the assailed person to believe, and he does in fact believe, that danger of some great personal injury is actually impending over him and there is no other reasonably safe means or way to avert or escape it, he will be justified in

using such means and weapons as he has at hand or as the situation affords in his self-defense." This is claimed to be a sufficient explanation or qualification of the above erroneous instructions. The qualifying words in "*reasonable* appearance," and "that it *reasonably* may cause the assailed to believe," come very near repeating the erroneous instructions. This qualifying instruction is found in a very long sentence with a great many qualifying words, and would be very difficult for the jury to remember in full, while the erroneous instructions are short, pungent, and pithy, and easily penetrate the mind and gain lasting lodgment in the memory. This instruction is not given to qualify the others, and the others are allowed to remain unqualified and unchanged, as if perfectly consistent with this. But, besides this, the above instructions were in effect repeated afterwards as follows: " If you shall believe that the killing was *necessary* in his lawful self-defense, and justifiable, your verdict should be that the defendant is not guilty; but, if you should find that the killing *was not necessary*, and so not justifiable, then you will inquire whether it was the crime of manslaughter." This again made the defendant's justification depend upon the actual necessity to take life, and this is the last deliverance of the court to the jury on the subject. In *People v. Gonzales*, 71 Cal. 561, the instruction was: " But the necessity must be *apparent, actual, imminent, absolute*, and *unavoidable*." This was held erroneous. In *State v. Keasling*, 74 Iowa, 528, the correct rule was given after similar erroneous instructions, and it was held that it did not cure the error, and states the true reason that the two instructions were conflicting and contradictory, and it can never be determined which the jury obeyed, or under which the verdict was found. *State v. Shelton*, 64 Iowa, 333, is to the same effect; also *People v. Williams*, 73 Cal. 531; *Van v. State*, 21 Tex. App. 676; *Neyland v. State*, 13 Tex. App. 536.

The *second* error is assigned upon the following instruc-
tion: "Nor will it justify the killing, if the necessity of the
killing can be avoided by retreat." Here the necessity is
again repeated as the only justification of the killing, and,
in application to this case, that it was incumbent upon the
defendant to retreat if he could thereby have avoided the
necessity of killing the deceased under any circumstances.
If the instruction was given as a general proposition, it is
that retreat was necessary under any circumstances and in
all cases before taking life, if retreat is open. The court
erred in not stating the conditions under which retreat is
necessary. The defendant did not retreat before killing
the deceased. Therefore, he was not justifiable. This is
the import of the instruction. " If any forcible attempt is
made with a felonious intent against a person or property,
the person resisting is not obliged to retreat, but may pur-
sue his adversary until he finds himself out of danger."
*Pond v. People*, 8 Mich. 150. "Where an attack is made
with murderous intent, the person attacked is under no ob-
ligations to fly. He may stand his ground, and, if need be,
kill his adversary." 1 Bish. Crim. Law, § 850. " The obli-
gation to retreat does not arise at all in ordinary cases, but
the assailed may stand his ground and repel force by force."
Horr. & T. Self-Def. p. 33. The conditions under which
retreat is necessary were not given by the court, but the
instruction is that, no matter what facts the jury find as to
the assault of the deceased upon the defendant, it was his
duty to retreat. It was, in effect, finding the defendant
guilty, or the killing not justifiable. The learned attorney
general admits the conditions upon which retreat is neces-
sary, as above stated, and therefore I need cite no more
authorities upon that question, but refer to those cited in
the brief of the learned counsel of the plaintiff in error.
But it is contended that the circumstances were such that
it was the duty of the defendant to retreat rather than kill

the deceased. It was the province of the jury to find the circumstances under which the defendant ought to have retreated, rather than the attorney general, and they were not required or allowed to do so. If it was proper to instruct the jury on the subject, the court should have told them under what state of facts or circumstances it was incumbent on the defendant to have retreated. The error is obvious, and quite material.

*Third.* The court instructed the jury as follows: "I think the evidence does not tend to show that it could be manslaughter in any other degree than the first or second degree." The third degree of manslaughter is "the killing of another in the heat of passion, without a design to effect death, by a dangerous weapon." [R. S. sec. 4354.] There was a quarrel, and much abusive language, and great excitement. How can the court say that there was no heat of passion, or that there was a design to effect death by the shooting? He may have designed to shoot, but not to kill — that is not impossible. These were facts for the jury, not for the court, to find or to find that they did not exist. Then, there would seem to be evidence upon which the jury might have been warranted in finding the defendant guilty of manslaughter in the third degree. But the court instructed the jury further, giving his reasons why it was not manslaughter in a less degree than the second, by saying: "The other definitions have in them more of the element of mere accident or heat of passion, none of which appears by the evidence in this case." It was a most remarkable case, in view of the facts, if the "element of heat of passion" was not in it. The court should be very sure that the evidence would not justify some lower degree of crime before so instructing the jury. An assault is a natural and sufficient provocation to excite the passions. *Atkins v. State,* 16 Ark. 568; 2 Whart. Crim. Law (6th ed.), § 932. This instruction was error. *People v. Hamilton,*

76 Mich. 212; *State v. Adams*, 78 Iowa, 292; *Bonnard v. State*, 25 Tex. App. 173; *Hill v. State*, 8 Tex. App. 142; *Ledbetter v. State*, 27 Tex. App. 22; *Vollmer v. State*, 24 Neb. 838; *Baker v. People*, 40 Mich. 411. See many other cases cited in the brief of the counsel of the plaintiff in error.

*Fourth.* The counsel of the plaintiff in error attempted to impeach Robert Meddaugh, a witness for the state, by proving that he had made statements out of court different from his evidence on the trial. He failed to prove the precise statement which he denied having made when inquired of on his cross-examination. Whereupon, the court was asked to allow said witness to be recalled for the purpose of asking him whether he had made such statements, to lay the foundation for such contradiction and impeachment. The court refused to allow said witness to be so recalled, or to be so examined, unless the counsel would make the said Meddaugh the witness of the plaintiff in error. When the witness had been re-examined on the matter, the court ruled that he had been made the witness of the plaintiff in error, and would not allow the evidence in contradiction of the witness. This was a palpable error. It is the universal rule that the witness of the opposite party may be recalled to further cross-examine him touching statements made by him out of court, to lay the foundation for his contradiction by way of impeachment. *State v. Jones*, 64 Mo. 396; *Joseph v. Comm.* 1 S. W. Rep. (Ky.), 4; *Bennett v. State*, 28 Tex. App. 539; *State v. Goodrich*, 19 Vt. 116; Whart. Crim. Ev. § 484; *Johnson v. State*, 22 Tex. App. 206; Horr. & T. Self-Def. 532; 1 Thomp. Trials, § 490; *Stacy v. M., L. S. & W. R. Co.* 72 Wis. 331; *Hyland v. Milner*, 99 Ind. 308; *Comm. v. Hunt*, 4 Gray, 421; and many other cases cited in the brief of the counsel of the plaintiff in error.

There are other errors assigned, but which may not occur on another trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial. The warden of the state prison at Waupun will surrender the ·plaintiff in error to the sheriff of Clark county, who will hold him in custody until he shall be discharged or his custody changed by due course of law.

