SIPERO, Plaintiff in error, v. STATE, Defendant in error.

*No. State 16. Argued January 3, 1969.—Decided February 4, 1969.*
(Also reported in 164 N. W. 2d 230.)

For the plaintiff in error there was a brief and oral argument by *C. James Heft* of Racine.

For the defendant in error the cause was argued by *Theodore L. Priebe,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Gerald E. Clickner,* district attorney of Racine county.

HANLEY, J. Defendant raises the following issues on this appeal:

(1) Did the trial court abuse its discretion in excluding the impeachment evidence;

(2) Where a witness obviously testifies falsely under oath, does a verdict based on his testimony contain reasonable doubt as a matter of law; and

(3) Should a new trial be granted in the interest of justice?

### Excluding Impeachment Evidence.

The trial court was cautious throughout the trial to prevent error which would necessitate a retrial. As the case progressed it became obvious that the credibility of

Johnny Barry Tucker's testimony was important to the outcome of the case. Therefore, when the state objected to the impeachment testimony of the investigator, the trial court declared a recess to check the applicable law. What occurred during the recess was later placed on the record.

It quickly became apparent that a proper foundation for impeachment had not been laid. The emphasis then shifted to determining whether the defense could recall the state's witness to continue its cross-examination for purposes of laying the required foundation for impeachment. Following the recess, the trial court merely ruled that a proper foundation had not been laid. At that point, Mr. Tucker was present in court. The defense did not, however, attempt to recall him to lay the required foundation.

The next morning, the defendant's counsel apparently indicated to the court that he was under the impression that the trial court had denied their request to recall Mr. Tucker for purposes of continuing the cross-examination. The trial court made it clear that no such ruling had yet been made.

Finally, the defense requested permission to recall Mr. Tucker in order to lay the proper foundation for the impeachment evidence.

The trial court reviewed *Perkins v. State* (1891), 78 Wis. 551, 47 N. W. 827, and *Richards v. State* (1892), 82 Wis. 172, 51 N. W. 652, and came to the conclusion that it was within his discretion to permit one party's witness to be recalled by the opposite party to lay the foundation for impeachment evidence. However, the court refused to exercise his discretion to recall the witness on the grounds that the recall would be unfair to the state, that it would unduly emphasize the testimony of Mr. Tucker, and that further impeachment of the same witness would be merely cumulative. The trial court specifically stated,

however, that Mr. Tucker could be recalled if the defendant wanted him to be her witness. It is this ruling which the defendant now insists was an abuse of discretion.

The issue, more precisely phrased, would be:

Is it an abuse of discretion to deny a party the right to recall an opposing party's witness for purposes of continuing the cross-examination so that a foundation for impeachment can be laid?

It would seem that the case of *Perkins v. State, supra,* has settled that question, at page 559:

"The counsel of the plaintiff in error attempted to impeach Robert Meddaugh, a witness for the state, by proving that he had made statements out of court different from his evidence on the trial. He failed to prove the precise statement which he denied having made when inquired of on his cross-examination. Whereupon, the court was asked to allow said witness to be recalled for the purpose of asking him whether he had made such statements, to lay the foundation for such contradiction and impeachment. The court refused to allow said witness to be so recalled, or to be so examined, unless the counsel would make the said Meddaugh the witness of the plaintiff in error. When the witness had been re-examined on the matter, the court ruled that he had been made the witness of the plaintiff in error, and would not allow the evidence in contradiction of the witness. This was a palpable error. It is the universal rule that the witness of the opposite party may be recalled to further cross-examine him touching statements made by him out of court, to lay the foundation for his contradiction by way of impeachment. . . ."

The state, however, distinguishes the *Perkins Case* from the present one by referring to the appellate briefs in the *Perkins Case*. The defendant there had attempted to lay the proper foundation on his initial cross-examination, but he had not been precise enough. This would throw a different light on the language of the *Perkins Case:*

". . . It is the universal rule that the witness of the opposite party may be recalled to *further* cross-examine him touching statements made by him out of court, to lay the foundation for his contradiction by way of impeachment. . . ." *Perkins v. State, supra,* at page 559. (Emphasis supplied.)

Moreover, the state also cites the following language from *Richards v. State, supra,* at page 180:

"Thomas J. Richards, a son of the accused, and half-brother of the deceased, was examined as a witness on the part of the prosecution. He was in the house of the accused the night Mooney was stabbed, but not present when it occurred. On cross-examination he was asked whether he saw Mooney have a knife with which he was whittling on that evening. He answered in the negative. He had not been interrogated on that subject in his direct examination. After the prosecution rested, Thomas was called as a witness on behalf of the accused, and examined further in respect to Mooney having a knife at that time, and concerning other matters, none of which related to his testimony in chief when examined as a witness for the prosecution.

"Another witness was then called for the defense, and it was sought to elicit testimony from him to impeach that of Thomas by showing that Thomas had theretofore made statements to witness inconsistent with his testimony concerning the knife. The court ruled that when Thomas gave such testimony the accused had made him his own witness, and could not be permitted to impeach his testimony by showing that he had made different statements out of court concerning the same matter. The ruling was correct. While a party may show that the testimony of his own witness is incorrect or false in a matter material to the issue, he cannot be allowed to impeach such witness by direct testimony either of his bad reputation for veracity or that he testifies to one thing in court and asserts the falsity of it out of court. This rule is elementary, and the testimony of Thomas which the defense thus sought to impeach comes within it."

Both the trial court and the state contend that the *Richards Case* is inconsistent with the *Perkins Case*. However, the factual difference in the cases is so dissimilar that the *Perkins Case* was not even cited in the *Richards* opinion.

In *Perkins,* as in this case, the defense wanted to recall the state's witness solely to lay the proper foundation for impeachment. The testimony which the defense wanted to impeach concerned the merits of the case. There was no attempt to impeach the general reputation for truthfulness of the state's witness.

In the *Richards Case,* however, the defense recalled the state's witness as their *own witness.* The trial court specifically found, in that case, that the testimony which the defense got after the witness was recalled would not have been proper cross-examination (because the questions were beyond the scope of the direct examination). Moreover, the testimony which the witness gave after being recalled (and which the defense later sought to impeach) did not go to the merits of the case. In short, the defense tried to impeach its own witness.

The brief of the state in the *Richards Case* distinguishes the *Perkins Case* from the *Richards'* facts. In *Perkins* the state's witness was recalled by defendant for the sole purpose of enlarging the foundation for impeachment. In *Richards* the purpose was in part to prove new matter and thereafter discredit him as to such testimony as might be unfavorable to defendant.

In the present case, it cannot be disputed that the foundation evidence was proper cross-examination. We believe this fact puts the present case within the rule of the *Perkins Case.*

The rule in the *Perkins Case* is not solely a product of Wisconsin law.

"The proper time to lay the impeachment foundation is on cross-examination, but it is permissible to recall a

witness for the purpose of laying a foundation for impeachment." 3 Wharton's, Anderson, *Criminal Evidence* (12th ed.), p. 341, sec. 917.

"Where the impeacher is in danger of losing the use of his evidence by not having asked the preliminary question on cross-examination, the witness may of course be *recalled in order to be asked*. But this recall, like all others . . . is in the discretion of the trial Court,—a discretion which will usually permit the recall where there has been nothing distinctly culpable on the part of the impeacher." 3 Wigmore, *Evidence* (3d ed.), pp. 720, 721, sec. 1036.

The trial court properly recognized that it was within his discretion to permit the recall. He refused to exercise his discretion, however, and an analysis of his reasoning in so doing is important.

Basically the trial court thought it would be unfair to the state to permit the witness to be recalled. The judge also stated that

". . . Bringing him back at this time would put this witness all out of context with the other witnesses. . . ."

The judge also indicated that any further impeachment of Mr. Tucker would be merely cumulative.

We do not believe that this reasoning was a sufficient basis for refusing to permit the impeachment foundation. The testimony of Johnny Barry Tucker was absolutely essential to the state's case. It is certainly questionable whether the second-degree murder conviction could have been obtained without it.[3] Mr. Tucker was the only nonparticipant present when the fatal wound was suffered.

---

[3] The trial court in his decision on motions after verdict stated: "The State's case in the main is based upon the testimony of Johnnie Barry Tucker. His testimony taken apart from any other witness established the commission of the crime by the defendant. . . ."

It is true that there was some culpability on the part of the defense. It is difficult to believe, however (although the state does so contend), that the failure to lay the proper foundation was a tactical error. It is quite obvious, and defense counsel has so informed the court, that the failure to lay the proper foundation was due to neglect on the part of counsel. Even the trial court indicated that, had the proper foundation been laid, he would have permitted the evidence to go in. If the impeachment had truly been merely cumulative, it would seem that it would have been rejected whether or not the proper foundation had been laid. We do not believe that the oversight on the part of counsel should prohibit the introduction of evidence which might have been of some value to the defendant.

We conclude it was an abuse of discretion under the circumstances to refuse to allow the recall of the witness Tucker in order to lay the foundation for impeachment.

We need not review the remaining issues inasmuch as we hold that the trial judge improperly exercised his discretion in excluding impeachment evidence.

A new trial must be granted.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with this opinion.