PARHAM, Plaintiff in error, v. STATE, Defendant in error.

*No. State 42. Argued December 1, 1971.—Decided January 4, 1972.*
(Also reported in 192 N. W. 2d 838.)

462

For the plaintiff in error there was a brief by *Cotton, Rose & Rose* and *Terry W. Rose,* all of Kenosha, and oral argument by *Terry W. Rose.*

For the defendant in error the cause was argued by *Sverre O. Tinglum,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. The defendant's initial contention is that his recall to the stand was for the specific purpose to impeach him and, therefore, prejudicial error. The general rule is to the contrary to defendant's assertion. 3 Wharton, *Criminal Evidence,* p. 296, sec. 891, points out:

"The accused may be cross-examined for the purpose of impeachment by questions which tend to impeach his

credibility; by inquiry as to prior contradictory statements; as to matters relating to his memory, motives, history, past conduct, and other matters affecting his credibility; or as to any specific fact tending to disgrace, degrade, or incriminate him, or to discredit him or impeach his moral character.

"For this purpose a wide latitude is allowed in the cross-examination. Unless limited by statute to matters elicited on direct examination, the defendant may be cross-examined to impeach his character as to matters not brought out upon direct examination, and generally, as to all matters that go to affect his credibility, or which tend to discredit him, even though they are apparently irrelevant or collateral."

Moreover, this court in an old case, *State v. Glass* (1880), 50 Wis. 218, 6 N. W. 500, permitted the prosecution to recall the defendant for additional cross-examination in order to lay the foundation for the introduction of an impeaching letter. Therein we said, at page 223:

"It is generally in the sound discretion of the court to allow a witness [in that case, the defendant in a murder trial] who has been discharged from the stand to be recalled for further cross examination; and this is so, even though, as in the present case, other proceedings have intervened."

The *Glass* case is cited in 8 Wigmore, *Evidence* (McNaughton rev. 1961), p. 470, sec. 2276 (3), for the proposition:

"The waiver involved in the accused's taking the stand permits the usual stages of inquiry to be pursued . . . . He may therefore be *recalled for further cross-examination* under the same conditions as the ordinary witness."

In the recent case of *Sipero v. State* (1969), 41 Wis. 2d 390, 396, 164 N. W. 2d 230, we posed the question:

"Is it an abuse of discretion to deny a party the right to recall an opposing party's witness for purposes of continuing the cross-examination so that a foundation for impeachment can be laid?"

In that case, we reversed the trial judge's ruling that the witness could not be called, because he failed to support his decision by an evident exercise of discretion. While it is apparent that *Sipero* does not stand for the proposition that it is ipso facto an abuse of discretion to refuse to allow the recall of an adverse witness for further cross-examination, it does stand for the proposition that it is within the discretion of the trial judge, properly exercised, to recall a witness or a defendant for that purpose.

It is the general rule that a witness who testifies on his own behalf may be recalled for the purpose of laying a foundation for impeachment. 3A Wigmore, *Evidence* (Chadbourn rev. 1970), p. 654, sec. 890, points out: "Generally the law is that a defendant taking the stand as a witness may be impeached *like any other witness*."

There are, of course, circumstances in which it would be improper and which would constitute an abuse of discretion to recall a witness for further cross-examination. 3A Wigmore, *Evidence* (Chadbourn rev.), pp. 1041, 1042, sec. 1036, points out the recall of the witness:

". . . is in the discretion of the trial court,—a discretion which will usually permit the recall where there has been nothing distinctly culpable on the part of the impeacher."

In the instant case, the necessity for the recall and the rebuttal testimony was largely occasioned by the testimony given by the accused's alibi witnesses subsequent to the accused's own appearance on the stand. At the time of the objection to the accused's being called for cross-examination, the circumstances which necessitated his recall were thoroughly discussed by the court and counsel. It is evident that the testimony was permitted only after the trial judge was fully apprised of the relevant arguments and had exercised proper judicial discretion in respect to his ruling on the defendant's further testimony.

The defendant claims, for the first time on this appeal, that the defendant's testimony on cross-examination infringed on his constitutional right against self-incrimination. This objection to the testimony or the defendant's further examination was not raised at trial, although the district attorney clearly stated in advance of calling the defendant that he wished to examine him on matters "beyond the scope" of the direct examination.

The defense attorney at trial recognized that, under the rule adopted by this court in *Boller v. Cofrances* (1969), 42 Wis. 2d 170, 166 N. W. 2d 129, the accused could be cross-examined on matters that were "beyond the scope." We said in *Boller* at page 181:

". . . If the question is relevant and is otherwise admissible and the information solicited is within the knowledge of the witness, it should be within the sound discretion of the trial judge to determine whether or not questions on cross-examination prevent an orderly and cogent presentation of the evidence."

It is apparent that the inquiries made of the defendant when he was recross-examined were relevant and material to the charge for which he was standing trial. He had denied that he ever went without his glasses, and he was recalled for the purpose of determining his assertion in that respect at the specific time he was seen at the filling station without his glasses. He also denied that he had a gun—a pistol with a white handle. The subsequent testimony showed that the accused had a gun with a white handle when he was seen at the Clark station. These were issues inextricably interwoven with the plaintiff's identification of the defendant and the credibility of both the complaining witness and the defendant.

The testimony in regard to the filling station incident is attacked on this appeal on the ground that it was inadmissible because the jury could infer that the de-

fendant participated in an armed robbery of the filling station and that such testimony would be inadmissible as "prior-crimes testimony," which would be prejudicial in that it showed the defendant's generally bad character. The "prior-crimes" rule, however, is invoked on the rationale that it is not logically related to the crime charged. *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557. *Whitty* also points out at page 292:

"As well established as the complex exclusionary rule concerning evidence of prior offenses is the rule that evidence of prior crimes is admissible when such evidence is particularly probative in showing elements of the specific crime charged, intent, identity, system of criminal activity, to impeach credibility, and to show character in cases where character is put in issue by the defendant."

The fundamental objection to "prior-crimes" evidence is that it is neither logically nor legally relevant to the crime charged. The nature of questioned evidence in this case avoids the exclusionary "prior-crimes" rule, because the question of whether or not the accused wore his glasses at all times and whether he had a gun with a pearl or white handle were relevant to the victim's identification and, in addition, went directly to the credibility of the defendant on all issues. Moreover, it should be noted there was no evidence submitted to show a prior crime or that the defendant was engaged in illegal activity at the service station. Any evidence which went beyond the fact that the defendant was not wearing glasses and was carrying a white-handled pistol was carefully excluded from the jury. There was no evidence before the jury that would tend to degrade or besmirch the defendant on the grounds that he had committed a criminal offense which was not charged in the instant proceedings. Even were the testimony of such a nature that another crime was spelled out by the testimony and could therefore have been excluded, in the exercise of proper discretion it could

properly have been received in evidence under the multiple-admissibility rule. As we pointed out in *Whitty v. State, supra,* page 292, "Under the multiple-admissibility rule, evidence inadmissible for one purpose may be admissible as probative for another purpose." While we do not in this case find that there was evidence of a prior crime, under Rule 303 of the American Law Institute Model Code of Evidence, which we adopted in *Whitty,* the relevancy and probativeness of the testimony may, in the judge's discretion, be balanced against the possible prejudice.

It is apparent that the issues raised in the cross-examination of the defendant and the subsequent testimony of the two impeaching witnesses were highly probative to the identification of the accused. We find no error in respect to permitting the further cross-examination of the defendant as a part of the state's rebuttal, nor was there an abuse of discretion when the trial judge permitted the calling of the service station attendant and the Zion, Illinois, detective. Their testimony went directly to the impeachment of assertions made by the defendant and were only at the most peripherally concerned with any other criminal misconduct indulged in by the plaintiff. The testimony was sufficient for the jury to conclude that the defendant was guilty beyond a reasonable doubt. The question was one of identification; and although there were inconsistencies in Elizabeth's testimony, her version of what happened to her on the night of February 4, 1970, and who was her assailant was not incredible as a matter of law. In *Dozie v. State* (1970), 49 Wis. 2d 209, 216, 181 N. W. 2d 369, we said:

"... Claimed discrepancies between the identifications made and the description initially given to the police, go to the weight to be given to the identifications by the jury, ..."

The defendant argues that it is incredible that a kidnapper would leave his victim in an automobile while

he went to get a comb. While a good argument could be made to a jury that such testimony was suspect, it cannot be said that the victim's statement was incredible as a matter of law. The jury chose to believe the identification, which was made in a most positive manner during the course of trial.

The evidence if believed by the jury was sufficient to prove the defendant guilty beyond a reasonable doubt. *See Lock v. State* (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183.

Aside from questions of admissibility of evidence, the case was essentially one to be determined by the credence and weight the jury gave to the testimony of the witnesses. It is apparent they disbelieved the accused and believed Elizabeth's testimony. There were no prejudicial errors made during the course of trial in regard to the admission of evidence, and the evidence as admitted was sufficient to sustain the conviction.

*By the Court.*—Judgment affirmed.