CHIEF JUDGE WILLIAM CRANCH; JAMES S. MORSELL AND JAMES DUNLOP, Associate Judges.

---

ANTHONY LUCASEY

*vs.*

THE UNITED STATES.

WRIT OF ERROR TO THE CRIMINAL COURT.

AT LAW. DECIDED DEC. 18, 1852.

*Indictment for receiving stolen goods.*

1. In an indictment for receiving stolen goods, statements made by the prisoner to a witness, admitting that he had received the goods, and disclosing where they could be found, and that he had better tell the truth in the matter. Held, to be voluntary and permissible in evidence.

——————— Attorney for the Prisoner.

MR. PHILIP R. FENDALL, Attorney of the United States.

Indictment.

The jurors of the United States, for the county aforesaid, on their oath, present that Anthony Lucasey, late of the county aforesaid, laborer, on the 6th day of July, 1852, with force and arms at the county aforesaid, one watch of the value of $14 and one watch of the value of $150, of the watches, goods and chattels of one Charles Lesiaidi, before then feloniously stolen, taken and carried away, falsely, wickedly and unlawfully did receive and have (he the said

Anthony Lucasey, then and there well knowing the said watches, goods and chattels to have been feloniously stolen, taken and carried away) against the form of the statute in such case made and provided, and against the peace and government of the United States.

The jury found the prisoner guilty as charged, and the Court sentenced him to suffer imprisonment at labor in the penitentiary of the District of Columbia for the period of three years.

The United States to support the issue on their part. joined offered evidence tending to prove the commission of the larceny as charged in the indictment.

They further offered one Gustare Heisler, a competent witness who gave evidence to prove that the larceny was committed on the night of 17th of June, 1852, by one Burt Pettit and other persons, of which the prisoner was not one.

The United States then offered James B. Lokey, a competent witness, who gave evidence tending to prove that after the prisoner had stated he found the watches under some coal or lumber near the canal, and after it was represented to him that this story was improbable, and after he had been taken to the watch-house, he sent for the said James B. Lokey, who went to see him at the watch-house, and then told him that it would be better for him to tell the truth; that he persisted in saying that he had found the watches; that said Lokey asked him where the watches were, to which the prisoner answered that he did not know; that said Lokey replied it was no use for him to say so, as Lesiaidi had seen him with them, as he had sold one, and had offered to sell the other; that the prisoner knew where the gold watch was, and ought to tell said Lokey where it was; that the prisoner then told said Lokey that the gold watch was in a wood-yard between 13th and 14th streets, on the south side of New York Ave., and described the particular place where it was concealed; that said Lokey, accompanied a constable, went to the place described by the prisoner, and there found the gold watch.

The prisoner by his counsel objected to the said Lokey being permitted to state any of the foregoing conversation

between him and the prisoner, which took place after said Lokey had told him that it would be better for him to tell the truth, but the Court overruled the objection and permitted the whole of the subsequent conversation as aforesaid to be related by said Lokey to the jury.

To which ruling of the Court, and to the admission of which said subsequent conversation, the prisoner by his counsel excepts and prays, &c.

December 18, 1852.   Judgment of the Criminal Court affirmed.