## CHARLESTON.

### STATE *v.* MOONEY.

Submitted February 1, 1886.— Decided February 13, 1886.

1. Where a verdict has been rendered on an indictment for an injury
   done with intent to maim &c. under sec. 9, of ch. 118 of the
   Acts of 1882, finding the defendant not guilty of doing the act
   maliciously, but guilty of *unlawfully* doing the act charged, the
   court can not under the statute sentence the prisoner to confine-
   ment in the penitentiary and *also* impose a fine. (p· 547.)

2. In such case, where such a judgment has been rendered, this
   Court will not on reversing the judgment enter such judgment,
   as the circuit court ought to have rendered, but will remand the
   case for a proper judgment to be entered on the verdict. (p. 548.)

*W. W. Arnett* and *J. H. Pendleton* for plaintiff in error.

*Alfred Caldwell,* Attorney-General, for the State.

JOHNSON, PRESIDENT :

John Mooney was indicted in the circuit court of Ohio
county for feloniously and maliciously wounding Frank Mc
Adams with intent to maim, disfigure, disable and kill him.
The prisoner demurred to the indictment, and his demurrer
was overruled, and he pleaded not guilty.   On May 5, 1885,
the issue was tried before a jury, who found the defendant
not guilty of *maliciously* doing the act charged, but of *unlaw-
fully* doing the said act.   Upon the verdict the court entered
judgment "that the prisoner, John Mooney, be confined in
the penitentiary of this State for the period of one year, *and*
that he pay a fine of $100.00" and that the State recover its
costs.   The prisoner moved to set aside the verdict and grant
him a new trial also moved in arrest of judgment.   Both
motions were overruled, and the prisoner excepted.   The
evidence is all certified.

On July 3, 1885, a writ of error on motion of the prisoner
was granted to the judgment.

The counsel for the prisoner assign three errors: *first,*
overruling the motion for a new trial; *second,* overruling the
motion in arrest of judgment; and third, fixing the punish-

ment at one year in the penitentiary coupled with a fine of $100.

No defect is pointed out in the indictment, and none is seen by the court, therefore the court did not err in overruling the demurrer.

The evidence is conflicting. An attempt was made to prove an alibi in the face of the evidence that John Mooney inflicted the wound on McAdams. An attempt was also made to impeach two of the witnesses for the State. The jury were the exclusive judges of these matters. They were satisfied that Mooney was guilty and so found. The circuit court under well established rules could not set aside their verdict; and for stronger reasons this court can not set it aside. The motion in arrest of judgment was properly overruled. There seems to have been no ground whatever, on which to base it, the indictment being good.

The third and last assignment is, that the prisoner was sentenced to one year in the penitentiary *and* adjudged to pay a fine of $100.00. The statute, under which the defendant was convicted reads as follows : "If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except when it is otherwise provided, be confined in the penitentiary not less than two nor more than ten years. If such act be done unlawfully but not maliciously with the intent aforesaid, the offender shall at the discretion of the court either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months, and fined not exceeding $500.00." (Sec. 9 ch. 118, Acts 1882. p. 335.) Under this statute, when the jury rendered its verdict, that the prisoner was not guilty of *maliciously* doing the act charged against him in the indictment but was found guilty of unlawfully doing the act charged, there was lodged in the court a very wide discretion to be exercised by it in view of all the evidence and circumstances of the case. It could *either* sentence the prisoner to be confined in the penitentiary not less than one nor more than five years, *or* sentence him to be confined in the county jail not exceeding twelve months *and* to pay a fine not exceeding $500.00. The court could fix

his term of imprisonment in the penitentiary at five years or at one year or at any other term between the two periods; or he could sentence him to confinement in the county-jail for twelve months *and* impose a fine of $500.00, or the court might have sentenced him to jail for the shortest period of time *and* imposed the least possible fine. If the court chooses to sentence him to imprisonment in the jail, the statute requires him in addition to impose a fine of some amount, but if the court chooses to sentence him to confinement in the penitentiary, the statute did not in that event authorize him to impose any fine in addition. The court therefore erred in imposing the fine of $100.00 in addition to the confinement in the penitentiary for one year.

The judgment must therefore be reversed. But what shall be done with the case? Can this Court pass judgment on the prisoner in accordance with the verdict of the jury? That verdict is good and must stand; but can this Court, which did not try the case, can not know all the circumstances which appeared at the trial, did not see the witnesses or hear their evidence, undertake to exercise the discretion conferred by the statute upon the trial-court? The Attorney General asks us to do this and cites three cases from the General Court of Virginia and one from our own Court as authority for such action. (*Brooks's Case,* 4 Leigh 669; *Murray's Case,* 5 Leigh 720; *Hall's Case,* 6 Leigh 615; *State* v. *Gould,* 26 W. Va. 258.)

In *Brooks's Case* the court sentenced the prisoner to be kept in a solitary cell, &c. in the penitentiary for *one sixth* instead of *one twelfth* part of the term of imprisonment of two years ascertained by the verdict of the jury. The act only allowed the court to require that he should be kept in a solitary cell *one twelfth* of the term; the court therefore reversed the judgment and entered the proper judgment.

In *Murray's Case* it appeared, that the statute fixed the maximum limit of solitary confinement at *one twelfth* of the term, and the circuit court fixed it at *one fourth;* the court reversed the judgment and entered a proper judgment.

*Hall's Case* was of the same character. The court below fixed the solitary confinement at *one tenth* of the term, when

the maximum was *one twelfth*.   This judgment also was reversed, and a proper judgment entered.

In *Gould's Case* the prisoner was found guilty of cruelty to an animal, and the court imposed a fine of $50.00.   The statute fixed the punishment at a fine "not less than $50.00 or imprisonment in the county-jail for not less than ten days or both at the discretion of the court."   But the court superadded, that the prisoner should give a bond in the penalty of $500.00 to keep the peace, &c. for three years, and that he be taken into custody, until such bond be given.   This Court held there was no authority to require such bond to be given and reversed the judgment and entered the same judgment, as the circuit court had entered omitting the unlawful addition in the order.

In none of these cases was the discretion of the court below in fixing the punishment on the verdict of the jury interfered with.   But if we should do what the Attorney-General asks us to do, we would interfere with the discretion lodged in the circuit court.   It is very evident from the record in this case, that the Judge, when he entered the judgment, from a hasty reading of the statute supposed, that he had the authority under the statute to add a fine to the confinement in the penitentiary, therefore we do not know what judgment he would have rendered, if he had not made that mistake.   If we should reverse so much of the judgment, as imposed the fine, and let the residue remain, that evidently would not be doing what the court below intended to do. If we should here attempt to enter such judgment on the verdict of the jury, as the circuit court should have rendered, we could not do it under this peculiar statute, because we can not from the very nature of the case know what judgment the circuit court would have rendered, therefore there is but one thing we can do, that is, reverse the judgment and remand the case to the circuit court for a proper judgment to be rendered on the verdict of the jury, which is now here done.

REVERSED,   REMANDED,