# WHEELING.

## STATE *v.* HARR.

Submitted June 16, 1893.—Decided June 21, 1893.

1. FELONY—UNLAWFUL SHOOTING—CONSTRUCTION OF STATUTE.

Section 9, Chapter 144 of the Code (see Ed. 1891, p. 897) reads as follows: "If a person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully but not maliciously with the intent aforesaid, the offender shall at the discretion of the court either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars." This section provides for two offences, both felonies, which must be so charged in the indictment and tried as such on the trial: (1) Malicious shooting, *etc.*, with intent to maim, disfigure, disable or kill, which having the essential element of malice corresponds to murder; (2) unlawful but not malicious shooting, *etc.,* with the intent aforesaid but wanting the element of malice, corresponding to manslaughter.

2. FELONY—UNLAWFUL SHOOTING.

The discretion given the court to ascertain and fix in the second

class a less degree of punishment does not reduce the grade of the crime.

3. FELONY—UNLAWFUL SHOOTING—EVIDENCE.

An *ex parte* map or diagram, made by a witness, and shown to be correct, may be given in evidence for the consideration of the jury, not as independent evidence, but to be considered by them in connection with other evidence, so as to enable them to understand and apply it.

4. BILL OF EXCEPTIONS—OBJECTION—EVIDENCE.

To make available in the appellate court an objection taken during the trial to the admission of evidence, the point must be made and properly saved by some bill of exceptions. It is not enough merely to note the objection and exception in the certificate of evidence.

5. IDENTIFICATION—EVIDENCE.

A witness, who testifies that he knows the person in question, may be asked his belief as to the identity of such a person. It is not a case of "expert testimony," but depends upon the observation and knowledge of the particular witness in the given case, to go to the jury for what it is worth, no matter what his science, skill or experience may be in the matter of identifying persons.

U. N. ARNETT, JR., and W. S. MEREDITH for plaintiff in error cited 1 Greenl. Ev. § 440; Best Ev. § 346; 1 Stark. Crim. Pl. (2nd Ed.) 74; 1 Bish. Crim. Pr. 534; 24 Gratt. 644; 2 Va. Cas. 122.

ATTORNEY-GENERAL T. S. RILEY for the State cited Greenl. Ev. (15th Ed.) § 440 note a.; 134 Mass. 198; 21 W. Va. 761; 17 S. E. Rep. 819; 2 Va. Cas. 379 (Note 4 Am. & Eng. Ency. L. 651); 5 W. Va., 510; 13 W. Va., 859; 27 W. Va. 546; 17 S. E. Rep. 307.

HOLT, JUDGE:

Upon an indictment and conviction for unlawful shooting with intent to kill. In the Circuit Court of Marion county, on the 22d day of November, 1892, the grand jury returned against the prisoner, R. T. Harr, the following indictment, a true bill: "Indictment. State of West Virginia, Marion County, to wit: In the Circuit Court of said county, November term, 1892. The grand jurors of the State of West Virginia in and for the body of the county of Marion, and now attending the Circuit Court of said county upon their oaths present that R. P. Harr, on the

26th day of September, 1892, in the county of Marion aforesaid, with a certain gun then and there loaded with gunpowder and leaden shot, feloniously and maliciously did shoot one John J. Martin, with intent him, the said John J. Martin, then and there to maim, disfigure, disable, and kill, against the peace and dignity of the State.

"J. A. HAGGERTY, Prosecuting Attorney.

"Found on the evidence of Frank Graves and others, a witness sworn in open court, and sent to the grand jury to give evidence at the instance of the State."

Indorsement on said indictment is as follows:

"State of West Virginia *vs.* R. P. Harr. An indictment for a felony. A true bill.

"T. N. SWISHER, Foreman."

On the 25th day of November, 1892, the prisoner appeared in person, and moved to quash the indictment, which motion the court overruled, and thereupon the prisoner pleaded "Not guilty," putting himself upon the country; and the State did the like. On the 10th day of March, 1893, the jury returned the following verdict: "We, the jury, find the defendant, R. P. Harr, not guilty of maliciously shooting John J. Martin with the intent charged in the within indictment, but we find said defendant, R. P. Harr, guilty of unlawfully shooting said John J. Martin with the intent charged in the within indictment."

Thereupon the prisoner moved the court to set aside the verdict, and grant him a new trial, upon the ground that the verdict was contrary to the law and the evidence; but the court overruled the motion, and fixed the term of his confinement in the penitentiary at the period of two years. The prisoner excepted, and the court certified all the evidence, and the case is here on writ of error.

The indictment is founded on section 9 of chapter 144 of the Code (see Ed. 1891, p. 897) which is as follows: "If a person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously,

with the intent aforesaid, the offender shall, at the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months, and fined not exceeding five hundred dollars."

The facts of the case are as follows: John J. Martin, the party shot, was mayor of the town of Monongah, in the county of Marion. On the 26th day of September, 1892, he was in his office up stairs in the Lanham building. Mrs. Eva R. Harr, the wife of the prisoner, was before him, as mayor, on the charge of illegal selling of liquor, for which she had been fined. Martin was sitting at his desk between two windows. He got up from his desk, and went to the right-hand window to look out, to see who was on the upstairs porch of the building. The prisoner was in his own house, one hundred and eighty five feet away, at a window in the rear of his house, from which point the window where Martin was standing when shot was visible, and when Martin came to the window of his office up stairs the prisoner, from the inside of his own house near the window, shot Martin with a rifle (thirty-two calibre) the ball entering the right shoulder about two inches below the top, a little in front of the center of the right arm, and, ranging up, broke the collar bone. The ball lodged in the body, inflicting a very dangerous wound, from which Martin was confined to his house some five or six weeks. Harr seems to have been laboring under great excitement at the time, caused by the prosecution and arrest of his wife; for immediately afterwards he expressed profound regret and went to the court-house and gave himself up to the officers of the law. This no doubt induced the lenient finding of the jury and the sentence of the court.

The counsel for the prisoner make six assignments of error, as follows:

"(1) The court erred in overruling the defendant's motion to quash the said indictment.

"(2) The court erred in allowing Ray Holbert, a witness on behalf of the State, to state from his knowledge and belief who the man was, whose leg he saw while looking through the window of Harr's house.

"(3) The court erred in allowing to be produced in evidence, on behalf of the State, the plat made by J. W. Paul, and the testimony in relation thereto, for the reason that the plat is not complete, it being already proved by the State that there is a building between the mayor's office and Harr's house, while the plat shows no such building.

"(4) The court erred in refusing to admit in evidence, on behalf of the defendant, the record of the *habeas corpus* proceedings in the case of the *Town of Monongah* v. *Eva R. Harr*, wife of the defendant.

"(5) The court erred in sentencing the defendant to confinement in the penitentiary, for the reason that the jury did not find the defendant guilty of feloniously shooting, but simply unlawfully shooting, which is a misdemeanor, not a felony; that the latter clause of section 9, c. 144, Code 1891, providing that the court, in its discretion, may sentence the defendant for a felony when only convicted of a misdemeanor, is contrary to the constitution of the State of West Virginia.

"(6) The court erred in refusing to set aside the verdict and grant a new trial, because the verdict was contrary to the law and the evidence, and because of other errors assigned."

1. The motion to quash the indictment was properly overruled. Every essential element is directly and positively charged; and that in the language of the statute, with all the circumstances of time, place, and manner necessary to particularize the act, and this according to settled forms. The only improvement that I can see would have been to have given the Christian name as well as the surname of the accused, and to have written out the dates in words; but neither is necessary in this State, the initials of a Christian name and the numerals for the dates being sufficient. See *Crookham* v. *State*, 5 W. Va. 510.

2. During the progress of the trial Ray Holbert, a witness for the State, said on examination in chief: "The day John J. Martin was shot I was working at Monongah at Doc. Harr's new house. I heard a shot fired. Saw Mr. Harr a few minutes after the shooting leave his house. He had a gun in his hand, and went towards Booth's creek.

When I first saw him he was at the right end of his kitchen. He had a nice-looking gun in his hand, and where I was I could look into Harr's house through the window from where I was rubbing up some plastering on the chimney. I saw a man's leg up to his knee in the back part of his house. He was resting on his knee in the back part of the house, on the left-hand side, close to the wall. I do not know who it was. Did not notice his pants." Question by the State: "Now, state from the best of your knowledge and belief who was that man." (Objected to by defendant's counsel. Objection overruled by the court, and exception noted.) Answer: "I thought it was Mr. Harr," *etc.*

The plain inference from the testimony is that the witness knew the prisoner, and "it is the constant practice to receive in evidence any witness's belief of the identity of a person, provided he has any knowledge of such person." 1 Greenl. Ev. § 140; *Hopper's Case*, 6 Gratt. 684. It is not a case of "expert testimony," but depends upon the observation and knowledge of the particular witness in the given case, no matter what his science, skill or experience may be in the matter of identifying persons. His evidence is competent, the weight being a question for the jury.

3. The witness J. W. Paul, a civil engineer, was examined as to the distance from the window in the back part of the prisoner's house to the window where Martin stood when shot, and whether one could see from the one point to the other. He had measured the distance, 185 feet, and examined the place with reference to the ability to see from the one point to the other, and in his testimony used a map or diagram he had made to illustrate and make intelligible his statements on the subject. This is a common practice and the court did not err in permitting it. See *Hoge* v. *Railroad Co.*, 35 W. Va. 562, 564 (14 S. E. Rep. 152); *Curtiss* v. *Ayrault*, 3 Hun 487; *Brown* v. *Tile Co.*, 132 Ill. 649 (24 N. E. Rep. 522).

4. Eva R. Harr, the wife of the prisoner being charged with and fined for illegally selling spirituous liquors complained of being illegally deprived of her liberty, and on the 1st of October, 1892, obtained from the judge of

the Circuit Court a writ of *habeas corpus*, which resulted in a dismissal, for failure to prosecute. This record of the *habeas corpus* proceeding the prisoner offered in evidence for the purpose of contradicting the record of the mayor, John J. Martin, put in evidence on the part of the prisoner on cross-examination of witness Martin; but the court rejected the same, and the prisoner excepted. The record put in evidence by the prisoner was the one against Mrs. Eva R. Harr, showing issuing of warrant against the wife for selling liquor contrary to law, issued August 29, 1892, under which she was tried and fined by the mayor. This writ of *habeas corpus* was issued after this offence was committed, on the petition of prisoner, with which the mayor, John J. Martin, had nothing whatever to do, and it was dismissed for failure to prosecute. It had no relevancy whatever to the case on trial, and was properly rejected. It did not tend in any degree to furnish any legitimate evidence in contradiction, explanation, or supplement of the record already in evidence. In other words, it could have no legitimate bearing whatever in the case on trial. Besides, the motion for new trial is based on certain specific grounds, not naming such evidence, and it must therefore be treated as waived. *Gregory's Adm'r* v. *Railroad Co.*, 37 W. Va. 606 (16 S. E. Rep. 819).

5. The statute on which this indictment is founded is one, in substance, of long standing (Rev. Code 1819, c. 156, §§ 1, 2) and has been before our courts quite often. *Com.* v. *Lester* (1820) 2 Va. Cas. 198; *Derieux* v. *Com.* (1823) Id. 379; *Com.* v. *Carrer* (1827) 5 Rand (Va.) 660; *Crookham* v. *State* (1871) 5 W. Va. 510; *State* v. *Newsom* (1878) 13 W. Va. 859; *State* v. *Meadows* (1881) 18 W. Va. 658; *State* v. *Jones* (1882) 20 W. Va. 764; *State* v. *Yates* (1883) 21 W. Va. 761; *State* v. *Donahoo* (1883) 22 W. Va. 762; *Ex parte Mooney* (1885) 26 W. Va. 36; *State* v. *Mooney* (1886) 27 W. Va. 546; *State* v. *Davis* (1888) 31 W. Va. 390 (7 S. E. Rep. 24); *Read* v. *Com.* (1872) 22 Gratt. 924; *Price* v. *Com.* (1883) 77 Va. 393.

The statute, as construed and applied in these cases, provides for an offence which it divides into two classes: (1) Malicious shooting, *etc.*, with intent to maim, disfigure,

disable or kill, which having the requisite of malice corresponds with murder; (2) unlawful but not malicious shooting, *etc.*, with the intent aforesaid, which lacking the element of malice corresponds to manslaughter. Both are made felonies by the statute, and both must be so charged in the indictment, and must be tried as such.

In this State offences are either felonies or misdemeanors. Such offences, as are punishable with death or confinement in the penitentiary, are felonies; all other offences are misdemeanors. Section 1, c. 152, Code (Ed. 1891, p. 943). It is the punishment prescribed by statute, which determines whether the offence be felony or not; so that in this State there are no felonies except such as are so designated by statute.

In this case the indictment charges the prisoner with the commission of a felony. He was tried according to the rules and practice proper in cases of felony with all constitutional guaranties carefully secured to him, and the jury found him guilty of a felony of the second class—the one corresponding to manslaughter—and the term of his confinement in the penitentiary was ascertained by the court. It is true the statute gives the court the discretion to fix a less punishment, but that does not reduce the grade of the crime. And this view of the law is recognized by section 21, c. 152, Code, as follows : "The term of confinement in the penitentiary or jail in case of conviction for felony, where that punishment is prescribed, shall be ascertained by the court."

6. After a careful reading of the evidence we can not say that there is a total want of evidence on any essential point, or that it is plainly insufficient to warrant the finding of the jury. *Grayson's Case* (1849) 6 Gratt. 712 ; *Hunter's Case*, 37 W. Va. 744 (17 S. E. Rep. 307).

The judgment is affirmed.