HINTZ, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 8—June 23, 1905.*

*Criminal law and practice: Homicide: Confessions: Court and jury: Preliminary inquiry: Appeal and error: Exclusion of jury: Discretion.*

1. Confessions made by a prisoner while under arrest are admissible if not elicited by coercion, threats, or artifice; and advice that it would be better to tell the truth, or words of similar import, are not sufficient to vitiate them.
2. In a criminal prosecution the question whether a confession made by the accused was improperly induced and its admissibility on the preliminary inquiry is one for the court.

3. In a criminal prosecution for homicide a finding by the trial court that confessions of the defendant were freely and voluntarily made and not improperly induced is *held* supported by the evidence.

4. In such case, where it appeared that, as the proof stood at the close of the state's case, there was nothing to go to the jury on the question of inducements causing the confession, it is not error for the trial court to so state.

5. In a criminal prosecution for homicide, on a preliminary inquiry as to whether certain confessions of the accused were improperly obtained, it is not prejudicial error to refuse to exclude the jury during such inquiry.

ERROR to review a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Affirmed.*

The accused was convicted of murder in the third degree, and sentenced to imprisonment in the state prison at Waupun for the term of fourteen years. He complains of error. It appears from the record: That one Henry Piske and wife, Augusta Piske, prior to August 1, 1903, lived upon a ten-acre tract of land, with a house and other buildings thereon, in Muskego, Waukesha county, Wisconsin. That they had known the accused for several years prior to August 1, 1903. On the day last mentioned the accused visited the Piskes and took dinner with them. Mr. Piske was at work in the field, about sixteen rods from the residence. After dinner Mrs. Piske went to the field where her husband was at work, but soon returned to the house, the accused being there with her. Afterwards, and about 2 o'clock, the accused went to the field and tried to hire a horse from Mr. Piske to go to Hale's Corners, which was refused, after which he left the premises, and Mr. Piske went to the house in search of his wife and found her lying on the floor dead. It was discovered that she had been shot and that $4 in silver and $12 in paper money were missing. That in the afternoon of August 1, 1903, about fifteen minutes before 3 o'clock, accused called on one John Martin, who lived on the road between the Piske farm and Hale's Corners, and tried to hire Martin to take him to Hale's

Corners so he could catch a car to Chicago. Martin declined to do so and the accused started on the run. He was arrested at Lake City, Minnesota, August 11, 1903, and taken to Milwaukee, arriving there at 5 p. m., and was immediately taken to the police station. On the following morning, when brought up for the purpose of being taken to Waukesha, he was asked if he wanted to make a statement, and he said "Yes." He made a statement to the chief of police, Janssen, and the sheriff, a stenographer also, being present. After making the first statement he made a second, only five minutes after the first. The accused was taken from the police station in Milwaukee to Waukesha, and from there he went to the Piske farm, accompanied by M. L. Snyder, mayor of Waukesha, and Wm. Scholl and Geo. Dwinnell, sheriff and undersheriff of Waukesha county, and on the way made certain confessions. He testified on the trial in his own behalf, in effect, that he was at the Piske farm August 1st, and to the occurrences there before the shooting; that when he and Mrs. Piske returned from the field she went into the house, and he stopped at the pigpen, and while there heard a shot, and shortly afterwards saw a man come from the front part of the house, going towards the gate; that he went into the house and saw Mrs. Piske lying on the floor; that he left the house much frightened and went into the field, but did not dare to tell Mr. Piske; that he did not know what he said to him; that he was in a hurry to get away; that he arrived in Milwaukee in the evening, saw his sister, and gave her $10 to turn over to his mother, stayed in Milwaukee part of the evening, and during the night went out on a freight train; that he was afraid of being arrested, and went away as fast as he could. He admitted that he had a revolver when at the Piske-farm, but claimed it was not loaded, and that he turned it over to a young lady with whom he spent the evening in Milwaukee. He also gave his version of the alleged confessions and the circumstances under which they were given.

*Henry Lockney,* attorney, and *A. Kanneberg,* of counsel, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *Walter D. Corrigan,* assistant attorney general, and oral argument by *Mr. Corrigan.*

KERWIN, J.   1. It is claimed by the accused that the court erred in the admission of evidence on the part of the state to prove certain alleged confessions made to witnesses Wm. Scholl, Geo. Dwinnell, and M. L. Snyder. After Mr. Snyder learned that the accused had been taken from Milwaukee to Waukesha he saw the sheriff and expressed a desire to see him. He went to the jail in the afternoon and had a conversation with the accused. He also accompanied the sheriff, undersheriff, and accused to the Piske farm. Before starting, it appears, Mr. Snyder warned the prisoner that he was under no obligation to make any statement, saying to him: "Charles, remember that whatever you do or say at this time must be entirely a voluntary declaration on your part. You are under no obligation to testify or to accompany the sheriff to the Piske farm. You are under no obligation whatever to say anything in regard to this occurrence." To which the accused nodded his assent, and said: "Yes; that is so." And further: "You are under no obligation to say anything, or go anywhere, or to do anything whatever in this matter at the present time. Whatever you do must be entirely voluntary and a free act on your part." To which the accused answered "Yes." · These conversations in which Mr. Snyder warned the accused were before any statement had been made by him. It appears that afterwards, and on the way to the farm, the accused made certain confessions and talked freely concerning the crime, and also, after arriving at the farm, described the premises. Mr. Snyder was put on the stand by the state to prove these confessions, and, before the testimony was admitted, counsel for the accused asked for a pre-

liminary inquiry as to whether there was any inducement offered, which was granted. Upon such inquiry before the court the matter was gone into concerning conversations had between Mr. Snyder and the accused before going to the Piske farm, and facts with regard to the warning hereinbefore stated were testified to by Mr. Snyder. It also developed upon this inquiry that, after the accused had been arrested and taken to Milwaukee, conversations were had between him, the sheriff, and Chief of Police Janssen of Milwaukee, in which the accused voluntarily made a statement, a stenographer being present; and about five minutes after making the first statement he made a second. After making the first statement, the sheriff testified he said to him:

" 'You might as well tell the truth, Charlie. I think it would be better for you'—or something like that; and he said, 'Do you think it would be better to tell the truth?' and I said, 'The truth is always better.' He said, 'Do you think it would do me any good?' and I said, 'I think the truth is always the best.' I cannot remember exactly. I think that is about the way. He said: 'Call the chief back. I will tell just how it happened and what I done.' "

The sheriff also testified that he did not make the accused any promises whatever. There is no evidence in the case as to what confessions, if any, were made in Milwaukee—the only evidence brought out by defendant on the preliminary inquiry being that the accused made two statements; but what these statements were, or whether the same or different from the statements afterwards made on the way to the Piske premises, or whether they amounted to a confession, does not appear. The court below very properly held that there was no evidence of any confessions made at Milwaukee, and the question is whether the confessions made on the trip to the farm were admissible. It must be conceded that the first statement made at Milwaukee was freely and voluntarily made, and there is nothing in the record to show that it was different from the one made on the way to the farm; nor can

it be said from the record that the second statement at Milwaukee was not corroborative of the first. True, the sheriff testified that accused said after making the first statement that he wanted to make a different one, but what statement he did make, or whether different, does not appear. So it cannot be said that the statements of the sheriff to the accused at Milwaukee induced any confession. It is well settled that admissions made by a prisoner while under arrest are admissible if not elicited by coercion, threats, or artifice. *Keenan v. State,* 8 Wis. 132; *Yanke v. State,* 51 Wis. 464, 8 N. W. 276; *State v. Glass,* 50 Wis. 218, 6 N. W. 500. As said in *U. S. v. Stone,* 8 Fed. 232, 241, "the real question is whether there has been any threat or promise of such a nature that the accused would be likely to tell an untruth from fear of the threat, or hope of profit from the promise." If a confession be free and voluntary, and proceed merely from a sense of guilt, and not from influence of hope or fear, it is competent. *Deathridge v. State,* 1 Sneed, 75. It has often been held that advice that it would be better to tell the truth, or words of similar import, are not sufficient to vitiate a confession. 1 Wigmore, Evidence, § 832, and cases cited in note 3; *Lucasey v. U. S.* 2 Hayw. & H. 86, 15 Fed. Cas. 1070, No. 8,588a; *State v. Meekins,* 41 La. Ann. 543, 6 South. 822. All that is required to make confessions admissible is that they be made "freely, without compulsion, and voluntarily, without promise or persuasion." *Connors v. State,* 95 Wis. 77, 69 N. W. 981. Even if the statements of the sheriff at Milwaukee could have had any influence upon the accused, it is very clear that there is ample evidence to support the finding of the trial court that the confessions made on the way to the Piske premises were freely and voluntarily made and not improperly induced. *State v. Carr,* 37 Vt. 191; *Comm. v. Sheets,* 197 Pa. St. 69, 46 Atl. 753; *State v. Stuart,* 35 La. Ann. 1015. The question whether the confessions made on the way to the Piske prem-

ises were improperly induced was one for the trial court on the preliminary inquiry, and that court held there was absolutely no evidence showing any inducement held out to the accused to make the confessions which were offered in evidence, and its determination is controlling unless it satisfactorily appears from the record that such ruling was clearly against the evidence. *Connors v. State, supra; Shephard v. State,* 88 Wis. 185, 59 N. W. 449; *Roszczyniala v. State, post,* p. 414, 104 N. W. 113. The alleged confessions made at Milwaukee, if any were made there, as the trial court said, were not before the court and would not be until offered by the state; and it clearly appears from the record that the confessions made on the trip to the farm were not only freely and voluntarily made by the accused, but were made after he had been explicitly warned.

2. It is assigned as error that the court stated after the preliminary inquiry, in the presence of the jury, that there was no evidence to show that the confession introduced in evidence was obtained by inducement. The statements covered by this assignment of error were made with reference to the introduction of confessions made to Snyder on the trip to the Piske farm and by way of ruling on motions or objections made by counsel for the accused. Counsel objected to the declaration made in Chief Janssen's office in Milwaukee, which had not been offered, and also to any occurrence which took place on the trip to the farm. The court stated in passing upon the objection that he did not know anything about what transpired in Milwaukee or what statement was made, saying there was nothing before the court. Further, on objection made to the testimony of Mr. Snyder, the court said, "There is no evidence before the court of any inducement held out at Milwaukee, so far as the court is advised." Further objections were made by counsel for accused and similar statements were made by the court. The evidence offered by the state at the time these objections were made was con-

fined strictly to what occurred on the trip to the Piske farm.
The question of the admissibility of the evidence on this pre-
liminary inquiry was for the court. *Shephard v. State,* 88
Wis. 185, 59 N. W. 449; *Connors v. State,* 95 Wis. 77, 69
N. W. 981; *Roszczyniala v. State, post,* p. 414, 104 N. W.
713; 12 Cyc. 482; *State v. Young,* 67 N. J. Law, 223, 51
Atl. 939; *State v. Storms,* 113 Iowa, 385, 85 N. W. 610.
Moreover, the remarks of the court objected to, and upon
which error is assigned, were strictly true when made. There
was no evidence on such preliminary inquiry sufficient to
justify the court in holding that the evidence offered was not
admissible, or in sending the question to the jury upon that
proposition, even if a proper question to be submitted to the
jury.  This being so, the accused could, in no manner have
been prejudiced by the remarks of the court.  The argu-
ment of counsel does not appear to be altogether consistent
respecting this proposition.  In one breath he insists that
the question whether any inducement was held out to the
accused was one for the court upon preliminary inquiry, and
in another breath assigns as error the submission of such
question to the jury, and yet he argues that the accused was
prejudiced by the remarks of the trial court.  Of course, if,
as argued by counsel, the question was one for the court and
not for the jury, then clearly any statement of the court
made in passing upon the question could not have prejudiced
the accused.  As the proof stood at the close of the state's
case there was nothing to go to the jury on the question of
inducements; but the version of the statements made at Mil-
waukee given by the accused on his examination was some-
what different from those testified to on preliminary in-
quiry, and the court submitted the question to the jury upon
all the evidence.  While it is for the court to determine on
preliminary inquiry the admissibility of evidence of con-
fessions offered on the part of the state, it is obvious that
such conflict of testimony may arise during the trial that the

court might not be satisfied the confession was voluntary, and in such case the question may be submitted to the jury under proper instructions. Therefore we are unable to see how the accused could have been prejudiced by the submission of this question to the jury, even conceding that, for the purpose of determining the admissibility of the testimony upon preliminary inquiry, the question were one for the court. While it is true that it is for the court to determine on preliminary inquiry whether the alleged confession has been improperly induced, still it is plain that cases might arise in which it would also be proper to submit the question to the jury. 12 Cyc. 482. We think it quite clear that the accused was not prejudiced by the submission of this question to the jury in the case before us.

3. Error is assigned because the court refused to exclude the jury from the court room during the preliminary inquiry. It is perhaps true that the remarks made by the court in refusing to exclude the jury were not strictly proper, but the language of the court was not excepted to. The only error assigned is to the ruling in refusing to exclude the jury. This question was one properly addressed to the discretion of the trial court, and we are unable to see any abuse of discretion. It is not very strenuously urged by counsel for the accused that the court was bound to exclude the jury during the preliminary inquiry, but they insist that it would have been better practice to have done so. It was not reversible error to refuse to exclude the jury upon the preliminary inquiry. 12 Cyc. 553; *Holsenbake v. State,* 45 Ga. 43; *Fletcher v. State,* 90 Ga. 468, 17 S. E. 100; *State v. Kelly,* 28 Oreg. 225, 42 Pac. 217; *Lefevre v. State,* 50 Ohio St. 584, 35 N. E. 52; *Shepherd v. State,* 31 Neb. 389, 47 N. W. 1118.

We discover no reversible error in the record.

*By the Court.*—The judgment of the court below is affirmed.