Roszczyniala, Plaintiff in error, vs. The State, Defend-
ant in error.

*May 8—June 23, 1905.*

*Rape: Identity of perpetrator: Evidence: Opinions: Competency:
Confessions: Admissibility: Demonstrative evidence: Appeal:
Questions reviewed: Witnesses: Cross-examination: Alibi: In-
structions to jury: Credibility of witnesses: Reasonable doubt.*

1. In a prosecution for rape (the fact that the crime was committed
being undisputed), the evidence identifying the defendant as
the perpetrator of the crime, stated in the opinion, is *held* ad-
missible and sufficient to support a conviction.

2. Identity of a third person is a matter of inference and opinion,
but it is an opinion which any one who remembers facts on
which to base the inference may give.

3. In criminal prosecutions if the accused, while under arrest, is
induced by hope or fear to make a confession, and makes it
relying upon the statements made to him, such confession is
inadmissible.

4. Mere request, advice, or admonition to tell the truth will not
vitiate a confession induced thereby.

5. As to whether a confession was voluntary or involuntary each
case must depend on its own facts and circumstances; the test
in every case being whether it was or was not the free, unin-
fluenced statement of the party making it.

6. While a person accused of a crime was being interrogated, after
his arrest, by a police officer as to his guilt, the remarks of a
bystander—"Give in one way or the other. It would be better
for you"—are *held* not to affect the admissibility of an alleged
confession, since the state was not responsible for what the by-
stander said.

7. In a criminal prosecution for rape the admission of statements
of the accused, claimed to amount to a confession, stated in the
opinion, is *held* to be without prejudice to the accused.

8. In a prosecution for rape, a shirt and trousers claimed to have
been worn by the accused at the time of the commission of the
offense, under the evidence, stated in the opinion, are *held* suf-
ficiently identified and properly admitted in evidence.

9. In such case, no claim having been made upon the trial that the
garments were obtained by the officer in any improper man-
ner—much less that there was any unreasonable search,—it is
too late to raise such objection on appeal.

Roszczyniala v. State, 125 Wis. 414.

10. Where, in a criminal prosecution, a witness for the state had been cross-examined as to conversations with a police officer relative to his knowledge of the crime, it is not error to permit the state to further examine the witness concerning the same conversation.

11. In a prosecution for rape the commission of the crime was undisputed, the defense being that the accused was not the man who committed the offense. Among other things the court instructed the jury: "The defense claimed in this case is that of an *alibi;* that is, that the defendant was elsewhere when the offense was committed. The testimony offered to prove this defense should be subjected, like all the evidence in the case, to rigid scrutiny, for the reason that witnesses, even when truthful, may be honestly mistaken in, or forgetful of, times and places." *Held,* that such instruction was not erroneous.

12. In such case the court further instructed the jury: "Evidence of previous convictions of one charged with a crime, or of one called as a witness, is received for the purpose of enabling the jury to determine the degree of credibility of the defendant or of such witnesses." *Held,* that the omission of further caution, that such evidence "was for that purpose only," was not error, in the absence of request to so charge.

13. In such case a portion of the instructions to the jury on the question of reasonable doubt, stated in the opinion, standing alone, is *held* inaccurate and erroneous, but covered and obviated by other parts of the charge on the same subject, and given in the same connection.

14. In such case it is not error to refuse to instruct the jury that a statement made by the accused: "Forgive me. Wait until my mother comes to make it up to you"—did not "amount to a confession of the crime with which" the accused was charged.

15. Such statement was properly admitted in evidence, and it was for the jury to determine the effect to be given to it

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BRAZEE, Judge. *Affirmed.*

For the plaintiff in error there was a brief by *W. E. & Frank P. Burke,* and oral argument by *W. E. Burke.*

For the defendant in error there was a brief by the *Attorney General, W. D. Corrigan,* assistant attorney general, and *E. T. Fairchild,* of counsel, and oral argument by *Mr. Corrigan.*

CASSODAY, C. J.    1. Upon the trial the plaintiff in error was found guilty, as charged, with having on July 7, 1904, committed the crime of rape upon one Agnes Zielinski, a little girl only nine years of age.    That such a crime was committed upon the little girl upon the day named, by some one, is undisputed.    The defense is that the plaintiff in error was not the man who committed the crime.    The testimony on the part of the state tends to prove that on the afternoon of the day named the accused was seen in the neighborhood of the little girl's home at 1153 Second avenue, in the city of Milwaukee, by Agnes and three other little girls, whose ages ranged from twelve to fourteen years; that he talked to them and asked them the way to Eighth avenue; that they all noticed that he had two gold teeth; that soon after he took Agnes to Austin's woods, so called, near the outskirts of the city, some half or three quarters of a mile distant from her father's home, and there committed the offense charged; that in going there they passed the residence of one Gielow, and later the flagman's shanty, and so on over the railroad track into the woods mentioned.    Gielow was sworn as a witness on the trial and testified that he did not at the time know the name of the accused or of the little girl, but that he saw them passing his house together on the afternoon of the day in question.    The flagman was sworn and testified on the trial that he had known the little girl for about a year, by her first name only; had noticed her in and about the railway tracks picking up coal and wood; that on the afternoon of the day in question he saw her and the accused passing together over the railroad tracks where he was stationed; that soon after the little girl's mother came and inquired of him if he had seen her little girl.    There are other facts and circumstances, including certain admissions of the accused, tending to prove that he committed the offense.    True, when the little girl next saw the accused, which was about five weeks afterwards, and at the police sta-

tion, she stated that he was not the man who committed the crime; but on the next day she was again taken to the police station, and in the presence of the accused, and she then recognized him as the man who committed the offense, and described the clothes he wore at the time and the fact that he had two gold teeth. So it is true that there is some discrepancy in the testimony as to the clothing he wore at the time, but there seems to be a general agreement among the witnesses for the state that on the afternoon in question the accused wore a black hat, a black coat, striped trousers, and a white shirt. The testimony on the part of the accused tends to prove that he was not at any of the places mentioned on the afternoon in question, but in another part of the city. As indicated, the identification of the accused with the person who committed the crime was the principal question at issue, and that was a question of fact for the jury. However simple the question may seem to those unaccustomed to reason on the subject, it is nevertheless regarded as one of the difficult questions which courts and judges are called upon to determine. Harris, Identification, § 3. The reason is obvious. The appearance of the person whose identity is in question can be easily changed. Id. The identifying witnesses are quite likely to differ more or less in their opportunities and capacities for perception and discrimination. Id. And so it is stated by the authorities that "opinions may be given by a witness on the question of identity," since this is "one of the cases in which it is impossible for the witness to state all the facts on which his opinion is based." 15 Am. & Eng. Ency. of Law (2d ed.) 924. Thus it is said in a late case in Massachusetts that:

"The identity of a third person always is a matter of inference and opinion, but it is an opinion which any one who remembers facts on which to base the inference may give. . . . A material fact may be proved by legitimate inference as well as by direct testimony." *Comm. v. Kennedy,* 170 Mass. 18, 24, 25, 48 N. E. 770. See, also, *State v. Sey-*

*mour,* 94 Iowa, 699, 63 N. W. 661; *Yarbrough v. State,* 105 Ala. 43, 16 South. 758; *Thornton v. State,* 113 Ala. 43, 21 South. 356; *People v. Rolfe,* 61 Cal. 540; *State v. Powers,* 130 Mo. 475, 32 S. W. 984; *State v. Lytle,* 117 N. C. 799, 23 S. E. 476; *State v. Harr,* 38 W. Va. 58, 17 S. E. 794.

The evidence which was admissible and admitted, within the scope of these authorities, is amply sufficient to support the conviction.

2. Error is assigned because evidence was admitted of certain confessions made by the accused. It is conceded by the state that, in order to be admissible, the confessions must have been voluntarily made. In ruling upon the question the trial court held, in effect, that if the accused, while under arrest, was induced by hope or fear to make the confession, and made the same relying upon such statement, then the confession was inadmissible. Such is the established rule. 6 Am. & Eng. Ency. of Law (2d ed.) 531. But it is equally "well settled that the mere request, advice, or admonition to tell the truth will not vitiate a confession induced thereby." Id.

"There is no fixed rule as to what will constitute a voluntary or involuntary confession. Each case must depend upon its own facts and circumstances; the test in every case being whether it was or was not the free, uninfluenced statement of the party making it." 3 Ency. Ev. 304, and numerous cases there cited.

For further discussion of the subject of such admission of evidence of such confessions, see *Hintz v. State, ante,* p. 405, 104 N. W. 110, and particularly *Bram v. U. S.* 168 U. S. 532, 18 Sup. Ct. 183. Of course the trial court, in ruling upon such admission, was required to determine, from all the facts and circumstances in the case, whether such admissions were made voluntarily or not. *Connors v. State,* 95 Wis. 77, 69 N. W. 981. Such determination is controlling unless it appears satisfactorily from the record that such determination was clearly against the evidence. Id. In that

case it was held that "a confession need not have been volunteered or spontaneous in order to render evidence thereof admissible; it being sufficient if it was made freely, without compulsion, and voluntarily, without promise or persuasion." Here the most that was said to the accused by any of the police officers in that regard was to the effect: "Why don't you tell the truth?" And again the inspector said to him: "You better tell the truth about this matter. They have all identified you"—referring to the little girls and the flagman. But upon being questioned by the district attorney the inspector stated that what he meant to say was: "Why don't you tell the truth about this matter?" So a bystander in the room said to him: "Give in one way or the other. It would be better for you." Of course the state was not responsible for what the bystander happened to say. In response to the question why he did not tell the truth he said to the mother of the little girl: "Forgive me. Wait until my mother comes to make it up to you"—or somewhat similar words, varied by the different witnesses. Another admission in response to such question was: "I will tell you. You send for my wife and have her come here this afternoon, and I will tell you all." And when his wife came he said: "Why did you tell about the blood spots on that shirt?" This refers to blood spots on the shirt of the accused which had been obtained from his wife, and claimed to have been worn by him at the time of committing the offense, and which blood spots he had attempted to account for in different ways. The accused admitted that he put the shirt on July 2, 1904, and wore it five or six days, and that he was drunk all the week. We find no reversible error in the admission of such statements of the accused.

3. Error is assigned for admitting in evidence the shirt and trousers claimed to have been worn by the accused at the time of committing the offense. The contention is that these articles were not sufficiently identified to be admissible in

evidence.    The evidence of the state tends to prove that the trousers so introduced were the ones he had on when arrested and the ones he wore during July, 1904, and that they had stripes thereon of a light character—similar to the trousers the witnesses saw him wear on the day the offense was committed, as mentioned.    The blood spots on the pants, partially washed out, and the blood spots on the shirt, mentioned, were where they would naturally be found if the blood came from the little girl at the time she claims the offense was committed.    Within the rules applicable to identification, already mentioned, we think the pants and shirt were properly admitted in evidence.    The objection as to the manner of obtaining the shirt is without significance.    All that appears is that at the time of the arrest the officer went into the house where the accused's wife was, and when he came out he had the shirt.    There is nothing to indicate that he obtained it in an improper manner.    *Thornton v. State,* 117 Wis. 338, 346, 93 N. W. 1107.    Besides, no claim appears to have been made upon the trial that the shirt was obtained by the officer in any improper manner—much less. that there was any unreasonable search,—and, if there had been, it is too late to raise the objection now.

4. It is claimed that error was committed in the admission of evidence of two of the little girl witnesses—Mary and Hattie—mentioned, as to conversations had by them with the police officers.    It appears that, after Mary and Hattie were respectively sworn and examined on the part of the state, they were cross-examined by counsel for the accused as to conversations they had with the policeman and the detective to the effect that they talked with them about the clothes worn by the accused on the day the offense was committed; that the first persons they talked with about the case were the policeman and the detective; that they asked them how the man looked; that they promised such officers that they would go and be witnesses in the case; that when

they were in court, waiting for the case to be tried, they were in the district attorney's office; that some one told them (but they did not know who it was) that they must all tell the same story and send the accused to prison, and that it would be better for the little girl; and then, after testifying that the policeman and the detective came out to see them July 8, 1904, which was the day after the offense was committed, the district attorney asked the question objected to. Such objections were overruled on the ground, as stated by the court, that the witnesses had been asked on cross-examination relative to such conversation with the officer. We perceive no error in such rulings.

5. Exceptions were taken to certain portions of the charge to the jury. Among other things the court charged the jury:

"The defense claimed in this case is that of an *alibi;* that is, that the defendant was elsewhere when the offense was committed. The testimony offered to prove this defense should be subjected, like all the evidence in the case, to rigid scrutiny, for the reason that witnesses, even when truthful, may be honestly mistaken in, or forgetful of, times and places."

The contention is that, the defendant having testified that he did not commit the crime charged, the defense claimed was more than that of an *alibi.* But the story of the little girl and the testimony of the medical witnesses in relation to her lacerated and bloody condition immediately after the alleged offense are undisputed, and hence there could be no question but that the crime was committed. The defense was that the accused was not the man who committed the offense, as stated by the trial court.

6. The court also charged the jury:

"Evidence of previous convictions of one charged with crime or of one called as a witness is received for the purpose of enabling the jury to determine the degree of credibility of the defendant or of such witnesses."

Counsel for the accused concedes that such portion of the charge was correct, but claims that "the jury should have been told that it was for that purpose only." Citing sec. 4073, Stats. 1898; *Fossdahl v. State,* 89 Wis. 482, 62 N. W. 185. See, also, *Paulson v. State,* 118 Wis. 89, 94 N. W. 771. It is enough to say that no request to so charge was made. *Fossdahl v. State, supra; Thornton v. State,* 117 Wis. 338, 348, 93 N. W. 1107; *Knoll v. State,* 55 Wis. 249, 12 N. W. 369.

7. The court also charged the jury at great length as to reasonable doubt. The only exception is to a portion of the charge defining a reasonable doubt to be "a doubt which would cause a reasonable or prudent man to pause or hesitate after giving the testimony that degree of consideration to which it is entitled and in which you have been instructed." This portion of the charge is claimed to be inaccurate and prejudicial to the accused, within the repeated rulings of this court, in that it omitted the usual reference to the most important affairs of life. *Emery v. State,* 92 Wis. 146, 65 N. W. 848; *Butler v. State,* 102 Wis. 364, 78 N. W. 590; *McAllister v. State,* 112 Wis. 496, 500, 88 N. W. 212. It is conceded by the state that, if the portion of the charge thus quoted stood alone, it would be subject to the criticism made; but it is claimed that such criticism is fully covered and obviated by a portion of the instruction upon the same subject, and given in the same connection, which the counsel for the accused has not printed or referred to, which is as follows:

"It is your duty to scrutinize the evidence with the utmost caution and care; bring to that duty the reason and prudence which you would exercise in the most important affairs of life—in fact, all the judgment, caution, and discrimination that you possess,—and then, unless you can say from that standpoint that you are satisfied of the defendant's guilt beyond a reasonable doubt, you should acquit him, for while a juror has a reasonable doubt of the guilt of the defendant

in a criminal case he cannot, without great violence to his conscience and sense of right, agree upon a verdict of conviction."

This seems to cover the criticism and answer the requirements of the cases cited. See, also, *Ryan v. State,* 115 Wis. 488, 498, 92 N. W. 271.

8. The error assigned for refusing to instruct the jury that a probability of the accused's innocence was a just foundation for a reasonable doubt is without force, since it is fully covered by the general charge.

9. So it was not error to refuse to instruct that the statement made by the accused to the mother of the little girl, namely: "Forgive me. Wait until my mother comes to make it up to you"—did "not amount to a confession of the crime with which" the accused was charged. The statement was properly admitted in evidence, and it was for the jury to determine the effect to be given to it.

We find no reversible error in the record.

*By the Court.*—The judgment of the municipal court of Milwaukee county is affirmed.